MARATHON PIPE LINE
COMPANY, Plaintiff,

v.

DRILLING RIG ROWAN/ODESSA, et
al., Defendants,

ROWAN COMPANIES, INC.,
Defendant-Third Party
Plaintiff-Appellant,

v.

HYDROTECH, et al., Third
Party-Defendants-Appellees.

No. 84–3525.

United States Court of Appeals,
Fifth Circuit.

May 28, 1985.

---

Jones, Walker, Waechter, Poitevent,
Carrere & Denegre, Ernest A. Carrere, Jr.,

James E. Wright, III, New Orleans, La., for Rowan Companies.

Camp, Carmouche, Palmer, Barsh & Hunter, Donald Ensenat, New Orleans, La., for HydroTech.

Before GOLDBERG, RUBIN, and HILL, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A jack-up drilling rig ruptured a pipeline lying on the seabed of the Outer Continental Shelf. A part used in repairing the pipeline failed owing to a latent manufacturing defect, causing additional expense to the pipeline owner. The owner of the jack-up rig settled with the pipeline owner for all repair expenses, including those caused by the defective part, and now seeks indemnity or contribution from the part manufacturer for the expenses attributable to its failure.

We hold that this action for indemnity or contribution is governed by maritime, rather than general, tort law and that maritime law grants the original tortfeasor the right to full indemnity from the manufacturer for the expenses incurred as a result of the failure of the defective part. Because this cause of action did not accrue until the tortfeasor was cast in judgment on the principal demand, laches does not bar the action. Accordingly, we reverse the summary judgment dismissing this case and remand it for further proceedings.

## I.

A jack-up drilling vessel, the ROWAN/ODESSA, owned by the Rowan Companies (Rowan), was being towed across an oil pipeline owned by Marathon Pipeline Company (Marathon) and lying beneath the sea on the bed of the Outer Continental Shelf adjacent to the state of Louisiana. A leg of the ROWAN/ODESSA ruptured the pipeline, necessitating extensive repairs. These were undertaken by Marathon.

After several days of preparation, a repair crew employed by Marathon began installing a set of sleeve-like "hydrocouples" designed to join the severed ends of the pipeline. The hydrocouples were manufactured and sold by HydroTech Systems, Inc. (HydroTech) and had been purchased by Marathon before the accident. Marathon retained HydroTech to provide technicians proficient in hydrocouple work to supervise the installation process, which took four days to complete.

Four days later the completed hydrocouples failed during routine testing procedures, causing a second rupture in the pipeline. The next day Marathon began repairing its pipeline through a more conventional method: installation of flanges, a process successfully completed in four days. Later HydroTech tested the hydrocouples and found that their failure had been caused by a defect in their manufacture.

HydroTech did not charge Marathon for the services it rendered in connection with the hydrocouple installation and agreed to correct the defects in the other hydrocouples Marathon had purchased. HydroTech did not, however, pay for other repair expenses Marathon incurred as a result of the hydrocouple failure, including barge time, support vessel expenses, and diving and repair crew expenses for the four days spent in installing the defective hydrocouples. The parties have agreed that these expenses amounted to $47,080 per day, thus making the extra repair costs attributable to the hydrocouple failure $188,320.

Invoking general maritime law and the Outer Continental Shelf Lands Act,[1] Marathon sued Rowan and other parties, but not HydroTech, in 1979, seeking damages and repair expenses occasioned by the ROWAN/ODESSA's collision with the pipeline. After a trial on the issue of liability, the district court found Rowan solely liable for the collision. Rowan appealed this judgment and the parties began preparations for the trial of quantum. While the appeal on the issue of liability was pending, Row-

1. 43 U.S.C. §§ 1331, *et seq.*

an filed a third party demand against HydroTech seeking indemnity or contribution for any repair costs attributable to the hydrocouple failure that Rowan would be compelled to pay. This demand was filed more than three years after the principal suit against Rowan was filed.

The district court granted HydroTech's motion to dismiss Rowan's third party demand, finding the demand time-barred under either the admiralty doctrine of laches or the Louisiana law of prescription. Rowan appeals this dismissal.

## II.

Prior to this appeal, Rowan and Marathon settled the amount due on the principal demand. According to the record, Rowan paid for the total repair expenses incurred by Marathon, including the $188,320 attributable to the hydrocouple failure. HydroTech argues that the Rowan-Marathon settlement did not in fact include anything for hydrocouple-related expenses, and that Rowan never conceded liability for those expenses. Rowan and Marathon, HydroTech contends, agreed to a "paper concession" to make the settlement appear to include a sum for the hydrocouple expenses. It argues that the parties reduced the amount paid for another settlement item to compensate for a fictitious sum paid for hydrocouple expenses, thus enabling Rowan to maintain a third party action against HydroTech to recover part of what it paid Marathon.

■ HydroTech's theory lacks support in the record. It produced no affidavits, depositions, or other evidentiary material to undermine the authenticity of the figures recited in the Rowan-Marathon settlement agreement, which was made a part of the record on appeal.[2] On appeal of the district court's judgment granting Hydro-

Tech's motion for summary judgment or dismissal of Rowan's third party action, we must view all evidentiary inferences most favorably to the opponent of the motion.[3] We cannot infer, from HydroTech's unsupported argument relying on a possible disparity in amounts paid for different items, that the Rowan-Marathon settlement is a partial sham. On the record before us, unrebutted by specific evidentiary materials,[4] we must assume for purposes of this appeal that Rowan actually paid Marathon for the expenses attributable to the hydrocouple failure.

## III.

■ HydroTech also contends that, by not charging Marathon for the services it rendered in installing the hydrocouples and by renovating the other hydrocouples Marathon had purchased, it informally settled its liability to Marathon for all hydrocouple-related expenses. It contends that Rowan, therefore, has no indemnity or contribution claim against HydroTech because Marathon has no claim against it.

The district court did not find and the record contains no evidence that Marathon released HydroTech. HydroTech produced no settlement papers or other evidentiary material to support this argument.[5] Although Marathon filed no claim against HydroTech, it assigned any such claim it had to Rowan as part of its settlement agreement with Rowan. While the record indicates that, at the time the instant appeal was filed, Rowan had not filed suit on the assigned claim, the very fact that an assignment was made casts doubt on HydroTech's thesis that Marathon had previously released HydroTech of all liability for the hydrocouple failure. On appeal of the district court's summary judgment in favor of HydroTech, we may not infer that Mara-

---

2. *E.g.,* 10 & 10A C. Wright, A. Miller and M. Kane, Federal Practice and Procedure § 2716 at 650, § 2721 (1983) and authorities cited therein.

3. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, 177 (1962); *Nat. Hygienics, Inc. v. Southern Farm Bureau Life,* 707 F.2d 183, 185–86 (5th Cir.1983); 10 C. Wright, A.

Miller, and M. Kane, Federal Practice and Procedure § 2716 (1983), and authorities cited therein.

4. *See supra* notes 2 and 3.

5. *Supra* notes 2 and 3.

thon released HydroTech merely because Marathon accepted the renovated hydrocouples and did not pay HydroTech for its services rendered in installing the first hydrocouples.[6]

## IV.

We turn to whether Rowan has an indemnity or contribution claim against HydroTech and, if so, whether that claim is time-barred. The district court found that, under either the admiralty doctrine of laches or Louisiana's law of prescription, any third party claim Rowan might have was time barred. It, therefore, pretermitted decision on what body of law governs this third party action. Rowan argues that the third party action is governed by maritime law and could, therefore, be barred only by laches. It urges further that it had not delayed in filing this action and that its third party claim was timely.

The result may indeed differ dependent on what body of law governs (a) the availability of a third party claim in this case, (b) when that cause of action accrues, and (c) when it becomes time-barred. It is therefore necessary for us to make a choice of applicable law. To do so, we must first determine what body of law governed the principal defendant's (Rowan's) liability to the principal plaintiff (Marathon) for the repair costs occasioned by the collision with Marathon's pipeline. We must then determine what corpus juris governs the third party defendant's (HydroTech's) liability to Marathon for the extra repair expenses caused by the hydrocouple failure. Having answered these questions, we then choose the body of law applicable to Rowan's third party action against HydroTech.

Rowan's liability to Marathon for repair costs was governed by general maritime law made applicable by the Admiralty Extension Act.[7] Under that statute, the admiralty jurisdiction extends to "all cases of damage ... to property caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." In such cases, suit may be brought "according to the principles of law ... obtaining in cases where the injury or damage has been done and consummated on navigable water"—the general maritime law.[8] The ROWAN/ODESSA, a jackup rig in tow to a new site, was a "vessel on navigable water"[9] at the time its leg struck Marathon's pipeline, a fixed structure on the seabed. The district court therefore correctly applied general maritime law on the issue of Rowan's liability for the collision.[10] General maritime law would, of course, also govern Rowan's liability for the various items of damage suffered by Marathon, including the cost of repairing the ruptured pipeline.[11]

■ Under general maritime law, a vessel owner at fault in a maritime collision is responsible for the full cost of necessary and reasonable repairs to the damaged structure and for the loss of earnings while the repairs are being made. If the injured party acts reasonably in repairing its damaged property, it may recover in full from the tortfeasor.[12] In *Signal Oil and Gas Company v. Barge W–701*,[13] we permitted a pipeline owner to recover from a barge that ruptured a pipeline the expenses incurred by the pipeline owner in its initial, unsuccessful attempt to repair the rup-

6. *Supra* notes 2 and 3.

7. 46 U.S.C. § 740.

8. *E.g., S.C. Loveland, Inc. v. East West Towing, Inc.,* 608 F.2d 160 (5th Cir.1979).

9. *E.g., Hicks v. Ocean Drilling and Exploration Company,* 512 F.2d 817, 824 (5th Cir.1975); *Producers Drilling Co. v. Gray,* 361 F.2d 432 (5th Cir.1966).

10. *Marathon Pipe Line v. Drilling Rig ROWAN/ODESSA,* 527 F.Supp. 824, 831 (E.D.La. 1981).

11. *E.g., Delta Marine Drilling Co. v. M/V Baroid Ranger,* 454 F.2d 128, 129 (5th Cir.1972); *Tennessee Valley Sand & Gravel Co. v. M/V Delta,* 598 F.2d 930, 932–33 (5th Cir.1979).

12. *See supra* note 11.

13. 654 F.2d 1164, 1176 (5th Cir.1981).

tured pipeline because the pipeline owner acted reasonably in its repair efforts.[14]

Rowan concedes, that Marathon acted reasonably in attempting to repair its pipeline with the hydrocouples; had the device worked, Marathon, and therefore Rowan, would have avoided the greater costs required by the traditional flange method of repair. The parties agree that Marathon had no responsibility for the hydrocouple failure. Because the hydrocouple installation was a reasonable, albeit unsuccessful, repair effort, Rowan, under the undisputed facts, was liable for all the expenses of its installation and removal.

While it is not clear whether, in the *Signal Oil* case, the failure of the first repair effort was due to a defect in the manufacture of a part used in the repairs, the case cannot be distinguished on the basis that possibly products liability was not involved. The manufacturer's fault does not absolve the initial tortfeasor of its liability for the costs of a reasonable repair effort. The failure of the part does not make the unsuccessful first repair effort a "separate tort" against the original victim as Hydro-Tech argues, although the product defect may entitle the tortfeasor to seek redress from the manufacturer of the defective object. If negligence is not assignable to the party who undertakes the repair effort, the tortfeasor must make that party whole for its reasonable repair costs.

The sovereignty of maritime law over the original tort does not necessarily make that body of law control HydroTech's liability to Marathon. Logic and consistency point in the direction of using a single doctrine to cover all aspects of these interrelated claims. But statutes may dictate departure from neat doctrinal symmetry. Moreover, choice of laws in tort matters is determined separately with respect to each issue.[15] The hydrocouple malfunction occurred on a fixed structure (a pipeline) lying on the Outer Continental Shelf. The Outer Continental Shelf Lands Act[16] extends "the ... laws ... of the United States" [including state law as surrogate federal law] "to the subsoil and seabed of the outer Continental Shelf and to ... all installations ... which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, *or ... for the purpose of transporting such resources....*"[17] Under the Act, "the civil ... laws of each adjacent State ... are declared to be the law of the United States for that portion of the ... seabed of the outer Continental Shelf ... which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf...."

Marathon's pipeline is an installation erected on the seabed of the Outer Continental Shelf to transport resources produced from the subsoil, and it is therefore property subject to the Act.[18] Accidents occurring on fixed structures on the Outer Continental Shelf have consistently been held subject to the Act and governed by the civil laws of the adjacent state.[19] Similarly, damage occurring to the fixed structure itself, when not caused by a colliding vessel, is governed by the Act.[20] The Act, therefore, makes Louisiana law, as surro-

14. *Id.* at 1176.

15. Restatement (Second) of Conflicts § 145; § 173 comment a (1971).

16. 43 U.S.C. §§ 1331, 1333(a).

17. Emphasis added.

18. *E.g., Rodrigue v. Aetna Casualty and Surety Co.,* 395 U.S. 352, 360, 89 S.Ct. 1835, 1839, 23 L.Ed.2d 360, 366 (1969); *In re Dearborn Marine Service, Inc.,* 499 F.2d 263, 272 (5th Cir.1974); *Terry v. Raymond International,* 658 F.2d 398, 405 (5th Cir.1981).

19. *Rodrigue v. Aetna Casualty and Surety Co.,* 395 U.S. 352, 360, 89 S.Ct. 1835, 1839, 23 L.Ed.2d 360, 366 (1969); *Dickerson v. Continental Oil Co.,* 449 F.2d 1209, 1218–19 (5th Cir. 1971); *Louviere v. Shell Oil Co.,* 515 F.2d 571 (5th Cir.1975).

20. *E.g., CNG Producing Co. v. Columbia Gulf Transmission,* 709 F.2d 959, 960 n. 1 (5th Cir. 1983); *Dickerson v. Continental Oil Co.,* 449 F.2d 1209, 1218–19 (5th Cir.1971).

gate federal law, govern HydroTech's liability to Marathon for the hydrocouple-failure expenses.

Rowan argues that, because the hydrocouples were installed by divers in the Gulf of Mexico, "the damage caused by the failure of the hydrocouple[s] occurred in a maritime context, and therefore, is a maritime tort." However, the "maritime context" in which the hydrocouple installation and failure may have occurred does not displace the statutory mandate that damage occurring on, or to, a fixed structure on the Outer Continental Shelf is governed by the Act.[21]

Neither party disputes that, under Louisiana law and the undisputed facts before us, HydroTech, the hydrocouple manufacturer, would be liable for Marathon's expenses attributable to the hydrocouple failure.[22] Rowan and HydroTech would both, therefore, be liable to Marathon for the hydrocouple-related expenses, though under different bodies of law. Rowan's liability would be determined by general maritime law while HydroTech's would be governed by Louisiana law applied as surrogate federal law.

### V.

▇ This requires us to choose the law governing the third party action brought by a defendant liable under general maritime law against a third party liable for the same item of damage under a different body of law, here Louisiana law. We conclude that the indemnity or contribution claim is governed by general maritime law.

This court has held that the body of law establishing the indemnitee's primary liability governs his claim for indemnity or contribution against a third party.[23] "[A]ny non-contractual right to indemnity in respect of established tort liability arises out of the tortious conduct upon which the indemnitee's liability was established."[24] It is thus of no consequence that the third party indemnitor may be liable to the primary plaintiff under a different body of law, whether contract law, the law of a foreign nation, or state law applied as surrogate federal law.

In *In re Dearborn Marine Service, Inc.*,[25] a fire occurring on a fixed offshore drilling platform spread to a vessel moored nearby, killing workers on both the platform and the vessel. The court applied state law as surrogate federal law in assessing the claims brought against the platform owners and operators. It held that maritime law governed the claims brought against the vessel and its owners. Finally, the court applied maritime law to the indemnity claim brought by the vessel owners against the platform owners and operators.[26]

We follow the same reasoning, noting that the Restatement indicates the same result. Under its principles, the indemnity and contribution claims are "determined by the local law of the state ... that has the most significant relationship" to the issue.[27] The tort occurred in a maritime place and that was where the relationship between the two parties, Rowan and HydroTech, centered. The other factors appli-

**21.** *E.g., Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. 352, 360, 89 S.Ct. 1835, 1839, 23 L.Ed.2d 360, 366 (1969); *Rohde v. Southeastern Drilling Co., Inc.*, 667 F.2d 1215, 1218 (5th Cir. 1982).

**22.** *E.g., Weber v. Fidelity and Casualty Insurance Co. of N.Y.*, 259 La. 599, 250 So.2d 754 (1971) (imposing strict liability upon the manufacturer of a defective product); *Media Pro. Consult., Inc. v. Mercedes-Benz of N.A., Inc.*, 262 La. 80, 262 So.2d 377 (1972).

**23.** *See Tri-State Oil Tool Indus., Inc. v. Delta Marine Drill. Co.*, 410 F.2d 178, 186 (5th Cir. 1969); *In re Dearborn Marine Service, Inc.*, 499 F.2d 263, 287 (5th Cir.1974). *See also Avondale*

*Shipyards, Inc. v. Vessel Thomas E. Cuffe*, 434 F.Supp. 920, 927 (E.D.La.1977), *citing Tri-State Oil Tool Indus., Inc.; White v. Johns-Manville Corp.*, 662 F.2d 243, 247 (4th Cir.1981), *citing Tri-State Oil Tool Indus., Inc. Compare* Restatement Second of Conflicts, § 173 (1971).

**24.** *White v. Johns-Manville Corp.*, 662 F.2d 243, 247 (4th Cir.1981).

**25.** 499 F.2d 263 (5th Cir.1974).

**26.** *Id.* at 287.

**27.** Restatement (Second) of Conflicts, §§ 173, 145 (1971).

cable according to the Restatement do not indicate any other appropriate law. Because the primary claim asserted against Rowan was maritime in nature, Rowan's indemnity claim arising therefrom is also a maritime claim governed by maritime law.[28]

General maritime law grants Rowan a claim for full indemnity against HydroTech for the hydrocouple-related expenses. That body of law compares the fault of co-debtors and entitles a non-negligent or constructively liable tortfeasor to indemnity from a co-debtor guilty of actual fault.[29]

■ HydroTech argues that Rowan is responsible to Marathon for the hydrocouple-related expenses because of Rowan's actual fault in causing the pipeline rupture, and therefore it cannot recover full indemnity from HydroTech for those expenses. Rowan's actual fault in the collision, however, neither caused nor contributed to the hydrocouple failure. Actual fault for that mishap rests solely upon HydroTech, the manufacturer of the defective hydrocouples. Rowan had no control over HydroTech's manufacturing process and could not have prevented the hydrocouple failure. Even if Rowan is liable to Marathon for the added losses attributable to HydroTech's defective manufacture of the hydrocouples, its liability for hydrocouple-related losses is vicarious and constructive: Rowan must pay Marathon for the consequences of HydroTech's actual fault. Rowan may, therefore, seek full indemnity from HydroTech.[30]

## VI.

■ The indemnity action is not time-barred. Under general maritime law, as interpreted in this circuit, actions for indemnity and contribution do not finally accrue until the principal defendant is cast in judgment on the principal demand.[31] Because the principal defendant is permitted to bring the third party action even before he is cast in final judgment on the principal demand,[32] it might be concluded, and the author of this opinion once held, that the delay is measured from the time a third party action might have been filed.[33] Later Fifth Circuit decisions, however, take judgment day as the starting time. Rowan brought its third party claim against HydroTech before being cast in final judgment on Marathon's main demand because the issue of quantum of damages was still pending before the district court when Rowan filed the claim. Moreover, Rowan brought its third party claim 6 months after the district court's judgment against it on the issue of liability. Because the indemnity action had not yet vested, laches on the action had not begun to run.[34]

For these reasons, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion. The costs of this appeal are taxed to HydroTech.

---

**28.** *See White v. Johns-Manville Corp.,* 662 F.2d 243, 247 (4th Cir.1981). *See also Lowe v. Ingalls Shipbuilding, A Div. of Litton,* 723 F.2d 1173, 1184 (5th Cir.1984).

**29.** *See Loose v. Offshore Navigation, Inc.,* 670 F.2d 493, 500–502 n. 18 (5th Cir.1982).

**30.** *E.g.,* Restatement (Second) of Torts § 886B (1977).

**31.** *Hercules, Inc. v. Stevens Shipping Co., Inc.,* 698 F.2d 726 (5th Cir.1983) (en banc); *ITT Ray-*

onier, Inc. v. Southeastern Maritime Co., 620 F.2d 512 (5th Cir.1980).

**32.** Fed.R.Civ.P. 14.

**33.** *Avondale Shipyards, Inc. v. Vessel Thomas E. Cuffe,* 434 F.Supp. 920, 934 (E.D.La.1977).

**34.** *E.g., Hercules, Inc. v. Stevens Shipping Co., Inc.,* 698 F.2d 726, 734 (5th Cir.1983) (en banc); *United States v. Farr and Company,* 342 F.2d 383, 387 (2nd Cir.1965).