**COLUMBUS–McKINNON CORPORATION,**
Plaintiff,

v.

**OCEAN PRODUCTS RESEARCH, INCORPORATED, Defendant.**

No. 92–325–Civ–T–17C.

United States District Court,
M.D. Florida,
Tampa Division.

June 8, 1992.

Bradley J. Goewert, Gunn, Ogden & Sullivan, P.A., Tampa, Fla., for plaintiff.

Richard M. Sebek, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, Fla., for defendant.

## ORDER ON MOTION TO DISMISS

KOVACHEVICH, District Judge.

This cause is before the Court on a motion to dismiss complaint filed by Defendant, Ocean Products, on March 23, 1992, and response hereto.

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1947).

### STATEMENT OF THE FACTS

This is a maritime civil action where Plaintiff is seeking indemnification and contribution against Defendant. The facts giving rise to the complaint are on April 14, 1982, three seamen were injured aboard the USNS Zeus when a thimble/link uniline assembly failed under tension in the navigable waters off the coast of Cape Canaveral, Florida. Plaintiff manufactured the HA–125 master link involved in the incident.

The master link was then redesigned, fabricated, assembled, and altered by Defendant by integrating the link with an LBNO thimble as an integral unit resulting in a thimble/link assembly. The assembly was then heat treated and galvanized by Defendant.

Plaintiff alleges that Defendant negligently designed, fabricated, assembled and altered the thimble/link assembly and this negligence was the proximate cause of the damages for personal injury sustained by the seamen. Counts I and II of the Complaint assert indemnification and contribution claims respectively against Defendant. Plaintiff is bringing suit as a result of settlement and litigation with the seamen on November 29, 1990.

### STATEMENT OF THE CASE

Plaintiff commenced suit against Defendant in the Circuit Court of the Thirteenth Judicial Circuit of Florida on November 26, 1991. Defendant moved to dismiss Plaintiff's Complaint in the state court and then removed the action to this Court on March 13, 1992.

The procedural aspects of the motion before the Court will be governed by the Federal Rules of Civil Procedure. *Aquacate Consol. Mines, Inc. of Costa Rica v. Deeprock, Inc.*, 566 F.2d 523 (5th Cir.1978). However, the substantive law of the indemnity and contribution claims by Plaintiff will be subject to the principles of general maritime law. *Marathon Pipe Line v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229, 235 (5th Cir.1985).

### A. COUNT I: INDEMNITY

Defendant alleges Count I, indemnity, should be dismissed for failure to state a valid claim. Defendant asserts Plaintiff relies on the archaic active/passive negligence rule to support its indemnity claim. Plaintiff's response acknowledges the active/passive rule is no longer a legally recognized tort indemnity theory. Plaintiff, however, maintains it is not invoking this old theory in its complaint, but rather it is asserting one of the remaining tort-based

indemnity theories of the non-negligent or vicariously liable tortfeasor.

Indemnity is a legal principle where one tortfeasor may shift its entire loss onto another tortfeasor provided that the latter should appropriately answer for the entirety of the loss. *Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 829–830 (5th Cir.1992). General maritime law at one time offered a wide assortment of theories to base this shifting or apportioning of loss between the tortfeasors. The current status of the law, however, only provides a limited selection for the joint tortfeasor to rely upon in presenting it's indemnity claim.

The active/passive negligence rule is one example of a tort indemnity theory that has been applied to maritime law cases. Primarily the rule, based on restitution, allows a passive tortfeasor to discharge a liability that has been imposed on him by law onto the active or primary tortfeasor. *United States Lines v. Newport News Shipbuilding, Etc.,* 688 F.2d 236, 241 (4th Cir.1982).

The Supreme Court in *United States v. Reliable Transfer,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), however, viewed the active/passive theory to be outdated and replaced it with the comparative fault doctrine. This decision limited the availability of indemnity claims by tortfeasors, since the lower courts uniformly adopted the comparative fault doctrine. See *Loose v. Offshore Navigation, Inc.,* 670 F.2d 493, 501 (5th Cir.1982); *Self v. Great Lakes Dredge and Dock Co.,* 832 F.2d 1540, 1556 (11th Cir.1987), *cert. denied* 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988).

The Fifth Circuit decision in *Loose* is significant since it not only followed the *Reliable Transfer* decision, but also expounded upon this concept of comparative fault. The Court held that "the concepts of active and passive negligence have no place in a liability system that considers the facts of each case and assesses and apportions damages among joint tortfeasors according to degree of responsibility of each party." *Loose,* 670 F.2d at 502.

The Eleventh Circuit agreed with the reasoning of *Loose* by abandoning the ac-tive/passive rule and applying the more precise and definite method of the comparative fault. *Self,* 832 F.2d at 1557. This Court is compelled to follow the chain of decisions stemming from *Reliable Transfer* and uphold the comparative fault doctrine.

General maritime law still recognizes a limited variety of indemnity theories. *Hardy,* 949 F.2d at 833. Namely, there is the contractual indemnity theory. This rule is applied in situations where the parties have express contractual indemnity agreements. *Id.* at 834. The *Ryan Doctrine,* arising from *Ryan Stevedoring Co. v. Pan Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), allows indemnity recovery where the stevedore has breached a warranty of workmanlike performance implied in the contract between the vessel and stevedore. *Hardy* 949 F.2d at 834. The Court views these two theories, albeit viable and legal, as not applicable to the present discussion. The final available theory, a non-negligent or vicariously liable tortfeasor, will be examined further in light of the fact Plaintiff alleges it is relying upon this theory to state its claim.

This theory allows a vicariously liable or non-negligent tortfeasor to be entitled to indemnity "from a co-debtor guilty of actual fault." *Id.* at 833; *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA,* 761 F.2d at 236. In *Hardy* that Court interpreted the *Marathon Pipe Line* theory to apply equally to non-negligent as well as vicariously or constructively liable tortfeasors. *Hardy* 949 F.2d at 833. *Hardy* was not willing to expand the interpretation of the theory since "the term 'non-negligent tortfeasor' applies only to those defendants on which the law imposes responsibility even though they committed no negligent acts." *Id.*

Thus, the issue to be resolved by the court is whether or not the complaint sufficiently relies upon the viable *Marathon Pipe Line* theory or upon the abolished active/passive negligence rule. Defendant argues that the complaint fails to adequately invoke the *Marathon Pipe Line* theory since the complaint did not allege that the

"actual fault" for the injuries suffered by the seamen rested solely with Defendant. The Court disagrees with this proposition and denies the motion to dismiss.

Specifically, the Court finds the complaint to sufficiently state a cause of action dependent upon the vicariously liable tortfeasor rule or the *Marathon Pipe Line* theory. The complaint satisfies this standard since it alleges that the Plaintiff, as a non-negligent Defendant or who has vicarious liability, is entitled to indemnity from Defendant whose negligence was the proximate cause and therefore, was guilty of actual fault.

The terms "secondary liability" and "primary liability" in the complaint do not necessarily give credibility to Defendant's argument that this language invokes the stale active/passive rule. The Court acknowledges that these phrases have sometimes been used in connection with the archaic active/passive rule, *United States Lines*, 688 F.2d at 241. This association in the past, however, does not give rise to a presumption of invoking the active/passive rule by the mere use of these terms in the present complaint.

## B. COUNT II: CONTRIBUTION

■ Count II seeks contribution for the amount of money Plaintiff settled with the injured seamen. Defendant argues the count should be dismissed since Plaintiff failed to allege the following: the parties had a common legal liability to the seamen; did not allege that Defendant owed the injured seamen or Plaintiff a duty; and did not allege how Defendant breached this duty. Plaintiff response is that it states a cause of action since it alleges that since the parties were concurrent tortfeasors this gives rise to them having a common legal liability. Plaintiff further argues the duty and the breach are encompassed within the allegation of Defendant's negligent design of the assembly.

■ A cause of action for contribution exists between concurrent tortfeasors where one tortfeasor has settled with the injured seamen and the other tortfeasor has not, and the amount of contribution turns on the percentage of fault for each joint tortfeasor. *Great Lakes Dredge & Dock Co. v. Chevron Shipping Co.*, 957 F.2d 1575, 1581 (11th Cir.1992); *Self v. Great Lakes Dredge and Dock Co.*, 832 F.2d at 1546. In *Great Lakes Dredge & Dock*, the Court held, notwithstanding the fact that a tortfeasor had settled with the initial injured party, it should be entitled to contribution from the other tortfeasor, since the settling tortfeasor may well have been forced to pay far more than its proportionate share of damages. *Great Lakes Dredge & Dock*, 957 F.2d at 1583.

There is a 'traditional view' in general maritime law that submits that "there can be no contribution between concurrent tortfeasors unless they share a "common legal liability" toward the plaintiff." *Simeon v. T. Smith & Son*, 852 F.2d 1421, 1434 (5th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). In *Simeon* the Court reasoned that the liability or contribution claim should arise from the tortfeasor owing an "obligation" or duty to the injured party. *Id.* at 1434.

The Court, upon review of Count II finds it to be legally insufficient to establish a claim of contribution. This is because the complaint fails to allege that Defendant owed a duty to the injured seamen or Plaintiff; nor does it allege how Defendant breached whatever duty was owed. Without the foregoing, Plaintiff cannot make a showing that the parties shared a "common legal liability" towards the seamen. *Simeon Id.* at 1434.

Accordingly, it is

ORDERED that Defendant's motion to dismiss Count I of the complaint be denied.

ORDERED that Defendant's motion to dismiss Count II of the complaint be granted. Plaintiff shall have ten (10) days from the date of this Order to amend it's complaint, and Defendant shall have ten (10) days from the date the amended complaint is filed with the Court to answer.

DONE and ORDERED.