[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 9, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-10218

_____

D. C. Docket No. 00-01703-CV-ORL-31-KRS

NOVA INFORMATION SYSTEMS, INC.,

Plaintiff-Appellant,

versus

GREENWICH INSURANCE COMPANY,
NAC REINSURANCE COMPANY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(April 9, 2004)**

Before EDMONDSON, Chief Judge, BIRCH and FARRIS[*], Circuit Judges.

BIRCH, Circuit Judge:

_____

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

This appeal stems from the financial woes of Premier Operations, Ltd. d/b/a Premier Cruise Lines ("Premier"), a pleasure cruise company, and involves a cast of four main characters: (1) Premier; (2) the passengers whose vacation plans were thwarted by the cruise line's financial troubles and who pre-paid for their cruise with their Visa or MasterCard; (3) the plaintiff-appellant credit card processing company, NOVA Information Systems, Inc. ("NOVA"), which ultimately reimbursed disappointed passengers who paid with their Visa or MasterCard; and (4) the defendant-appellee surety company, Greenwich Insurance Company ("Greenwich"), which was ultimately responsible for reimbursing disappointed passengers who paid with either credit card, cash, or check. NOVA argues, in two claims based on contract and four claims based on equity, that it should not bear the financial loss of credit-card-paying customers as a result of Premier's bankruptcy and that, instead, Greenwich should be the financial "fall guy." The district court disagreed with NOVA and granted summary judgment to Greenwich on all six claims. After review, we AFFIRM.

## I. BACKGROUND

When an individual purchased a berth on one of Premier's cruise ships with his Visa or MasterCard, a series of financial transactions took place. First, Premier accepted the passenger's reservation and generated a transaction receipt for the

2

cruise.  Second, Premier forwarded the receipt to its merchant bank,[1] which would then credit Premier's account for the amount charged.  In this case, First Union Bank ("First Union") was Premier's merchant bank, but First Union subcontracted all of its credit card processing to NOVA.  Accordingly, First Union would credit Premier's account with the charged amount, and then NOVA would reimburse First Union.  Third, NOVA forwarded the charges to the appropriate card-issuing bank.[2] Finally, the card-issuing bank would pay NOVA, and then the passenger, upon receipt of his credit card bill, would pay his card-issuing bank directly.  Thus, Premier was paid by First Union, First Union by NOVA, NOVA by the card-issuing bank, and the card-issuing bank by the passenger.

In the event that a purchased cruise did not take place, the parties to the series of financial transactions would be reimbursed in essentially the opposite order in which they were paid.  The passenger would be reimbursed first by his card-issuing bank, pursuant to the Fair Credit Billing Act and the Visa and MasterCard regulations.  15 U.S.C. § 1666(a) and (b); 12 C.F.R. § 226.13(a)(3). The card-issuing bank would then seek a "chargeback," or reimbursement, from

---

[1]A merchant bank is a member of the Visa/MasterCard system that agrees to process payments made to the merchant—Premier—with those cards.

[2]The card-issuing bank is the bank that issued the Visa or MasterCard to the passenger purchasing the cruise.

3

First Union. 15 U.S.C. § 1666(a); 12 C.F.R. § 226.13(e)(1). Under their contractual agreement, NOVA would then reimburse First Union and NOVA, in turn, would normally seek reimbursement from Premier. In re Thomas B. Hamilton Co., Inc., 969 F.2d 1013, 1017 (11th Cir. 1992).

Because passengers ordinarily paid for their cruises substantially in advance of the departure date, the risk existed that Premier would become insolvent in the interval between receiving full or partial payment from a passenger and providing the pre-paid cruise. Accordingly, Premier, operating its cruise ships out of a U.S. port, was required by federal law and the Federal Maritime Commission to provide evidence that it could refund any unearned passenger deposits. 46 U.S.C. § 817e(a); 46 C.F.R. §§ 540.3, 540.22. To fulfill this requirement, Premier contracted with Amwest to post a "Passenger Vessel Surety Bond" ("Amwest bond") to protect any Premier "passengers"[3] whose pre-paid cruise did not set sail. R3-75, Ex. C.

Despite the existence of the Amwest bond, NOVA would face substantial financial risk in the event that Premier was unable to cover its chargebacks. Accordingly, NOVA sought reassurance from Premier regarding its financial

---

[3]"Passenger" is defined in FMC regulations as "any person who is to embark on a vessel at any U.S. port and who has paid any amount for a ticket contract entitling him to water transportation." 46 C.F.R. § 540.2(g).

condition. To ameliorate NOVA's concerns, Premier "urged Nova to remember that it was protected from any 'chargeback losses'" under the Amwest bond. R3-75 at 3. Unsatisfied with Premier's representation alone, NOVA asked Premier to obtain more specific assurances of third-party beneficiary coverage under the Amwest bond. Premier, in turn, asked the General Counsel of the Federal Maritime Commission ("FMC") for a legal interpretation of whether a credit card company could seek subrogation for the passenger reimbursements protected by a surety bond. Although the response was tempered, the FMC General Counsel replied in the affirmative.[4] Still not satisfied, NOVA sought assurance from Amwest directly that its chargeback claims would be covered under the Amwest bond. Amwest, however, would not provide NOVA with the assurance it sought.

In its ongoing effort to provide NOVA with adequate financial protection, Premier then contracted with the fourth main character, Greenwich Insurance Company ("Greenwich"),[5] to post a new surety bond, which "inure[d] to the

---

[4]The FMC General Counsel wrote that "the credit card company should be permitted to enjoy subrogation to the benefits the surety bond provides to passengers." R2-59, Ex. C. The General Counsel made clear, however, that "there is no case law addressing this issue . . . [and thus] a conclusive determination of this issue would have to be made by a court of competent jurisdiction. . . . [T]he opinion expressed herein is my own, rendered in my capacity as General Counsel for the Commission." Id.
Contrary to this position, the FMC's Proposed Rule now makes clear that credit card processors like NOVA are not intended to be protected by surety bonds required by the FMC. 67 Fed. Reg. 66,352 at 66,354 n.8 (Oct. 31, 2002) (to be codified at 46 C.F.R. pt. 540).

[5]NAC Reinsurance Corporation, also a named defendant-appellee, is the parent of Greenwich.

benefit of any and all passengers to whom the Principal [Premier] may be held legally liable for any of the damages herein described." R1-1, Ex. B. Greenwich's agent prepared a *proposed* letter of assurance, addressed to NOVA, expressing that NOVA would be covered under Premier's new surety bond.[6] In exchange for this proposal and the financial protection it purported to offer, Premier requested a reduction in the fees it paid to NOVA, but NOVA never agreed to the reduction. As a result, the proposal reflected in the draft letter was never finalized. Nevertheless, because of its contractual arrangement with First Union, NOVA continued to process Premier's credit card transactions.

In September of 2000, Premier ceased operating. To alert pre-paid Premier passengers that future cruises would not take place, both the FMC and Greenwich issued press releases encouraging passengers to contact their card-issuing banks for a refund.[7] And then the refund process began: passengers were reimbursed by

---

[6]This draft letter stated Greenwich's position that
so long as NOVA was able to provide reasonable evidence that it had honored credits to passengers who would have, according to all the terms of the FMC bond, been considered valid claimants to Greenwich for the non-performance by Premier, then NOVA would be considered a valid claimant as well under our bond.
R2-59, Ex. A.

[7]The FMC issued two press releases. The first stated that "for passengers who purchased their cruise by credit card, we suggest contacting the credit card company and providing them with this information." R2-59, Ex. K. The second press release stated that "Prior experience has shown that . . . credit card issuers may often provide speedier reimbursement to passengers than the claims process established to handle claims under bonds issued pursuant to [FMC] requirements." R3-93, Ex. F.

their card-issuing banks, the card-issuing banks by First Union, and First Union by NOVA under their contractual arrangement. Because Premier, now bankrupt, could not reimburse NOVA, NOVA was left without apparent recourse.

After receiving and paying the chargebacks, NOVA sent assignment forms to those passengers who had initiated chargebacks through their card-issuing banks. These assignment forms asked the recipients to assign their rights to receive refunds under the surety bond to NOVA, but also said that making the assignment did not affect the passenger's right to reimbursement from his card-issuing bank. R2-59, Ex. J. NOVA also contacted Greenwich to confirm that it was covered under the bond, but Greenwich contended that only individual "passengers" were covered. The FMC has since confirmed Greenwich's position that NOVA was not protected under the bond. Notice of Proposed Rulemaking, 67

---

Greenwich, through its law firm processing claims filed under the bond, also issued a press release encouraging passengers to contact their card-issuing banks for a refund. This press release stated:

> based on our experience . . . we believe that any passenger who paid for their transportation by means of a credit card would be well advised to ***immediately*** request the card issuer to cancel any charges relating to any of the cancelled cruises. . . . By filing a claim with the credit card company, . . . the passenger will avoid the delays that will inevitably occur in the investigation and claims settling process.
>
> All passengers who made payment for cruises that have been cancelled by cash or check may obtain a Claim Form [to submit to the Coordinating Center].

R3-93, Ex. E. (emphasis in original).

7

Fed. Reg. 66,352 at 66,353-54 (Oct. 31, 2002) (to be codified at 46 C.F.R. pt. 540).[8]

Unhappy to be left empty-handed, NOVA filed a complaint against Greenwich alleging six claims, based on its position that Greenwich, instead, should bear the financial burden: (1) breach of contract, (2) contractual subrogation, (3) promissory and equitable estoppel, (4) equitable subrogation, (5) contribution, and (6) unjust enrichment. The district court granted summary judgment to Greenwich on all six claims, and NOVA now appeals.

## II. DISCUSSION

In this section, we will (a) state the proper standard of review, (b) discuss and reject NOVA's two legal claims, and (c) discuss and reject NOVA's four equitable claims.

A. Standard of Review

"We review the trial court's grant or denial of a motion for summary judgment de novo, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party." Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). Summary judgment is appropriate when

---

[8]This Proposed Rule was issued issued after the parties filed their dispositive motions in the district court.

8

"there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

B. NOVA's Legal Claims

NOVA asserted two legal claims against Greenwich based on its position that Greenwich should bear the financial loss resulting from Premier's bankruptcy: (1) breach of contract and (2) contractual subrogation. We discuss and reject each claim in turn.

1. Breach of Contract

NOVA incorrectly argues that it is a third-party beneficiary to the surety bond contract between Premier and Greenwich. To maintain an action on a contract as a third-party beneficiary, NOVA must clearly show that either (a) the contract itself or (b) both contracting parties primarily and directly intended to provide a benefit to NOVA. Vencor Hosps. v. Blue Cross Blue Shield of R.I., 169 F.3d 677, 680 (11th Cir. 1999); Blu-J, Inc. v. Kemper C.P.A. Group, 916 F.2d 637, 640 (11th Cir. 1990); Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So.2d 1028, 1031 (Fla. Dist. Ct. App. 1994). We hold that the district court correctly concluded that "neither the contract itself nor the contracting parties expressed any intent to directly benefit [NOVA] as a third party." R4-111 at 13.

9

a.  The Contract

The contract on which NOVA maintains its claim is the surety bond issued by Greenwich to protect Premier's passengers.[9]  The surety bond provides protection for Premier "passengers" whose cruises did not take place.  R3-75, Ex. C.  "Passengers" are defined in FMC regulations—that have remained unchanged—as "any person who is to embark on a vessel at any U.S. port and who has paid any amount for a ticket contract entitling him to water transportation."  46 C.F.R. § 540.2(g).  "Person" is defined as "individuals, corporations, partnerships, associations, and other legal entities."  Id. § 540.2(a).

NOVA argues that including "corporations" in the definition of "person" indicates the FMC's intent to include credit card companies in the bond's protection for "passengers."  The "corporations" protected by surety bonds, however, are those that purchase tickets on cruise vessels:  "[i]f a corporation purchases all of the available berths for a particular voyage, that corporation or its designated beneficiaries/assignees are entitled to the benefits afforded by the ticket contract."  57 Fed. Reg. 41,887 at 41,889 (Sept. 14, 1992) (to be codified at 46 C.F.R. pt. 540).  In this case, NOVA has not *purchased* any tickets—it only reimbursed First

---

[9]We note that the FMC's Proposed Rulemaking makes clear that credit card processors like NOVA are not intended to be protected by surety bonds required by the FMC.  67 Fed. Reg. at 66,354 n.8.  Even prior to this new Rule, however, NOVA was not protected by FMC surety bonds as a bond claimant.

Union for chargebacks according to its contractual obligation. Although, in essence, NOVA has "paid" for a cruise because, in the chain of reimbursements, the money it paid First Union was eventually used to compensate disappointed passengers, we hold that the district court correctly concluded that "the legislature intended to cover purchasers of passenger fares in <u>advance</u> of the cruise, not third-party processors who honored chargebacks after the fact of non-performance." R4-111 at 14 (emphasis in original). Thus, NOVA is not a "passenger" entitled to protection under the surety bond issued by Greenwich.

### b. The Contracting Parties

Despite NOVA's contention, there is no evidence in the record––much less *clear* evidence—showing that *either* Premier or Greenwich intended for NOVA to be protected under the bond. NOVA argues that both the draft letter, written by Greenwich's agent and intended to placate NOVA's fears about Premier's financial condition, and the negotiations conducted between Premier and Greenwich, provide evidence that NOVA was an intended third party beneficiary to the bond. The draft letter, however, is just that––a proposal in draft form that was never finalized. And the negotiations between Greenwich and Premier show only that they negotiated over expanding the bond's coverage, not that the parties ever agreed to such an expansion. Even if Premier made representations to NOVA that

11

NOVA would be covered under its surety bond, there is no evidence in the record showing that Greenwich possessed a similar, finalized intent. Thus, because there is no clear evidence that both parties intended to benefit NOVA, NOVA may not maintain an action on the contract as a third-party beneficiary.

2. Contractual, or Conventional, Subrogation

NOVA wrongly argues that Greenwhich should reimburse NOVA for the chargebacks it has paid to First Union under the doctrine of contractual, or conventional, subrogation. Conventional subrogation "depends upon a lawful contract, and occurs where one having no interest in or relation to the matter pays the debt of another, and by agreement is entitled to the securities and rights of the creditor so paid." Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 647 (Fla. 1999). NOVA argues that it should step into the shoes of the Premier passengers who assigned their rights to reimbursement under the surety bond to NOVA.

NOVA's argument is misplaced because "an assignee can acquire no greater rights than those possessed by the assignor himself." Pulte Home Corp., Inc. v. Ply Gem Indus., Inc., 804 F. Supp. 1471, 1481 (M.D. Fla. 1992). The evidence in this case shows that NOVA received the assignments from Premier passengers *after* NOVA had already reimbursed First Union for those chargebacks—which means

that the passengers who assigned their rights to NOVA had already been reimbursed by their card-issuing banks, thereby extinguishing their claims. Because double recovery would be prohibited, those passengers had no right to reimbursement under the Greenwich bond and, thus, no rights to assign to NOVA. As a result, NOVA's claim based on conventional subrogation must fail.[10]

C.  NOVA's Equitable Claims

NOVA asserted four equity-based claims against Greenwich based on its position that Greenwich should bear the financial loss resulting from Premier's bankruptcy: (1) promissory and equitable estoppel, (2) equitable subrogation, (3) contribution, and (4) unjust enrichment.  We consider and reject each claim in turn.

1.  Promissory and Equitable Estoppel

Based on both promissory and equitable estoppel,[11] NOVA erroneously asserts that Greenwich should reimburse it for the credit card chargebacks NOVA has paid.  Neither version of estoppel, however, may be "invoked to enlarge or extend the coverage specified in a contract," unless the oral representations or

---

[10]Moreover, NOVA has not "paid the debt of another" as required for a conventional subrogation claim.  See part II.C.3. for a more complete discussion.

[11]Equitable estoppel requires reliance on a representation of fact while promissory estoppel requires reliance on a promise.  Pinnacle Port Cmty. Ass'n v. Orenstein, 872 F.2d 1536, 1543 (11th Cir. 1989).  This distinction is irrelevant in this case, thus we discuss estoppel generally.

promises are interpretations of ambiguous contract terms. Kane v. Aetna Life Ins., 893 F.2d 1283, 1285, 1285 n.3 (11th Cir. 1990).

That exception does not exist in this case because any representations Greenwich may have made either to Premier or to NOVA regarding NOVA's coverage under the bond were not interpretations of ambiguous terms. The FMC has defined "passenger" and "person" in its regulations, and the surety bond issued by Greenwich was intended to protect Premier "passengers." Because credit card processing companies do not fall within the definition of "passenger," any intent on the part of Greenwich (or Premier) to include NOVA as a protected "passenger" would have enlarged or extended the coverage specified in the bond.

Furthermore, even if estoppel were applicable in this case, NOVA cannot satisfy the elements of estoppel. Although NOVA may have detrimentally relied on the draft letter or the negotiations between Greenwich and Premier regarding NOVA's coverage under the bond, NOVA must show that *Greenwich* reasonably expected to induce NOVA's reliance based on the promises or representations Greenwich made. Pinnacle Port Cmty. Ass'n v. Orenstein, 872 F.2d 1536, 1543 (11th Cir. 1989). The district court correctly concluded that Greenwich "could [not] reasonably expect that an unsigned draft letter would induce [NOVA] into action or forebearance, especially where [Greenwich] did not . . . officially accept

14

the letter." R4-111 at 18-19. Moreover, the negotiations between Greenwich and Premier over whether the surety bond included NOVA as a claimant were never concluded: Premier never accepted Greenwich's draft proposal to extend coverage to NOVA because NOVA refused to lower Premier's fees in return. Thus, NOVA's claims based on estoppel must fail.

2. Equitable Subrogation

NOVA wrongly claims that Greenwich should reimburse NOVA based on the doctrine equitable subrogation. To maintain a claim based on equitable subrogation, NOVA must prove five elements: (1) that it made the payment at issue to protect its own interests, (2) the payment was non-voluntary, (3) it was not primarily liable for the debt paid, (4) it paid the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 646 (Fla. 1999). Subrogation, however, is not available to a party who pays his own debt. In re Munzenrieder Corp., 58 B.R. 228, 231 (M.D. Fla. 1986).

Essentially, NOVA argues that it qualifies for equitable subrogation because it paid Greenwich's debt to Premier passengers. Under the doctrine, NOVA now claims an equitable right to stand in the shoes of Premier passengers who were entitled to reimbursement under the Greenwich bond and, hence, claim

15

compensation from Greenwich. See Dade County Sch. Bd., 731 So.2d at 646.

NOVA's claim fails, however, because NOVA paid its own debt, not a debt

obligated by Greenwich.

Greenwich was obligated to pay Premier passengers who made a claim for

reimbursement under the surety bond. NOVA, on the other hand, was obligated to

reimburse First Union as a result of reimbursements filed by Premier passengers

with their card-issuing banks. Although, in essence, both NOVA and Greenwich

were ultimately responsible for reimbursing Premier passengers—NOVA for those

passengers who requested reimbursement from their card-issuing banks, and

Greenwich for those passengers who requested reimbursement under the

bond—their obligations were, as the district court correctly noted, "separate and

distinct." R4-111 at 21. NOVA was contractually obligated to reimburse First

Union regardless of whether any passengers ever made a claim for reimbursement

under Greenwich's surety bond.[12] Moreover, NOVA was not responsible for

directly reimbursing any Premier passengers. As the district court noted, "[t]he

fact that passengers could make a claim under the Bond or through their credit card

---

[12]The fact that the FMC and Greenwich issued press releases encouraging passengers to seek reimbursement from their card-issuing banks does not bolster NOVA's position. As the district court noted, "[i]t would be speculative to infer that the credit card passengers relied on [Greenwich's] press release and voicemail as opposed to the FMC's press releases." R4-111 at 22.

16

company . . . reinforces the fact that the liabilities [of NOVA and Greenwich] ran side by side, not vertically." R4-111 at 21 n.35 (emphasis in original). Thus, NOVA has not paid any debt belonging to Greenwich and cannot maintain a claim for equitable subrogation.[13]

## 3. Contribution

NOVA incorrectly argues that it is entitled to equitable contribution from Greenwich for a portion of its financial loss stemming from Premier's bankruptcy. The doctrine of equitable contribution "attempts to distribute equally among those who have a common obligation, the burden of performing that obligation." Fletcher v. Anderson, 616 So.2d 1201, 1202 (Fla. Dist. Ct. App. 1993) (per curiam). NOVA maintains that it and Greenwich have a "common obligation" to reimburse Premier passengers who paid for their cruise with their Visa or MasterCard.

NOVA's argument fails, however, because it was not responsible for reimbursing Premier passengers—rather, it was responsible for reimbursing First Union. Although the money paid to First Union was, considering the chain of reimbursements, ultimately paid to Premier passengers, NOVA, unlike Greenwich,

---

[13]We note also that the FMC's Proposed Rule makes clear that credit card companies like NOVA are not subrogees under FMC Surety Bonds. 67 Fed. Reg. at 66,354 n.8. For this additional reason, NOVA cannot maintain a claim for equitable subrogation.

did not have an obligation to reimburse those passengers directly. Similarly, Greenwich, unlike NOVA, had no obligation to First Union or, through it, to card-issuing banks. NOVA and Greenwich thus did not share a "common legal liability." Columbus-McKinnon Corp. v. Ocean Prod. Research, Inc., 792 F. Supp. 786, 789 (M.D. Fla. 1992). Accordingly, no "common obligation" existed between the two sufficient to maintain a claim for contribution.

4. Unjust Enrichment

NOVA erroneously claims that Greenwich owes it money based on a theory of unjust enrichment. To succeed on a claim of unjust enrichment, NOVA must show: (1) it conferred a benefit on Greenwich of which Greenwich is aware, (2) Greenwich voluntarily accepted and retained the benefit conferred, and (3) "the circumstances are such that it would be inequitable for [Greenwich] to retain the benefit without paying for it." Shibata v. Lim, 133 F.Supp.2d 1311, 1316 (M.D. Fla. 2000). NOVA argues that the "benefit" it conferred on Greenwich is a reduction in the ultimate liability of Greenwich under the surety bond because the passengers who were reimbursed by their card-issuing banks—a remedy they were encouraged to pursue––did not seek reimbursement under the bond.

Again, NOVA's argument is misplaced. NOVA was contractually obligated to reimburse First Union for any chargebacks it incurred. This obligation is

18

separate and distinct from the obligation Greenwich had to reimburse passengers who claimed a right to compensation under the bond. Although NOVA, in effect, ultimately paid for reimbursements that could have been claimed instead under the Greenwich bond, this did not confer a direct benefit on Greenwich. At best, NOVA conferred an indirect or incidental benefit on Greenwich, and the equities in this case do not favor shifting the financial burden from NOVA to Greenwich because both parties were compensated for the risks they took and the financial burdens they now suffer.[14]

NOVA, however, argues that requiring it to sustain the financial loss in this case would be inequitable for five reasons. All five of these arguments are flawed, and we discuss them in turn.

First, NOVA relies on the facts that the FMC has determined that its regulations are to be construed broadly to protect corporations, and that the FMC General Counsel opined that credit card companies would be protected under surety bonds. Contrary to this assertion, however, as we mentioned, the FMC regulations protect corporations as "passengers," and are not to be construed so

---

[14]NOVA, for example, increased the fees it charged Premier because of NOVA's uncertainty regarding Premier's financial condition. See, e.g., R3-79 at 176-77. Greenwich, in turn, required Premier to post 30% of the bond's $15 million value—approximately $5 million—in collateral, which Greenwich retains today, in order to secure the bond. R3-77 at 120-21.

broadly as to protect corporations like NOVA that reimburse merchant banks for chargebacks. And the FMC General Counsel's opinion was just that—an opinion, not binding precedent. Moreover, the Proposed Rule makes clear that the General Counsel's position was not validated and credit card processing companies are not protected as claimants under surety bonds. See 67 Fed. Reg. at 66,354 n.8.

Second, NOVA alleges that Greenwich made representations and promises that NOVA would be protected under the surety bond. For the same reasons why a claim for estoppel cannot be maintained, this argument is to no avail.

Third, NOVA contends that Greenwich is a compensated risk taker because Greenwich required Premier to post $5 million in cash collateral—which Greenwich retained—in exchange for the $15 million bond. But NOVA was also a compensated risk taker—NOVA raised the fees it charged Premier because of its concern over Premier's financial condition. In fact, NOVA too has recouped millions of dollars in fees from its relationship with Premier. R3-79 at 176. Thus, both parties are compensated risk takers and this argument does not support shifting the financial risk to Greenwich alone.

Fourth, NOVA contends that Greenwich "engaged in a concerted effort to shift their Premier-related losses" to NOVA by issuing the press release encouraging passengers to seek reimbursement from their card-issuing banks.

Appellant's Br. at 40. As the district court correctly noted, however, "[i]t would be speculative to infer that the credit card passengers relied on [Premier's] press release and voicemail as opposed to the FMC's press releases." R4-111 at 22. And even if some passengers were persuaded to seek reimbursement from their card-issuing banks instead of under the bond, NOVA would still be contractually obligated to reimburse First Union for any chargebacks it incurred. Requiring NOVA to honor its contractual obligations is not an inequitable result.

Fifth and finally, NOVA argues that because Greenwich would have been liable to reimburse any credit-card paying passengers who sought reimbursement under the bond instead of from their card-issuing bank, this necessarily means that Greenwich should be responsible for reimbursing all credit-card paying customers. The converse of this argument, however, is that because NOVA is ultimately responsible for reimbursing credit-card-paying passengers, Greenwich should be able to seek reimbursement from NOVA for all the reimbursement claims of credit-card-paying passengers that Greenwich has paid. The liabilities of NOVA and Greenwich, as we have discussed, are separate and distinct. Because both parties *could* be liable for the same reimbursements does not mean that either NOVA or Greenwich may then seek compensation from each other.

Thus, each of NOVA's five reasons to support equitable shifting of the financial risk in this case to Greenwich fails, as does NOVA's claim for compensation under the doctrine of unjust enrichment.

### III. CONCLUSION

NOVA alleged six claims against Greenwich based on its position that Greenwich, rather than NOVA, should shoulder the financial risk from Premier's bankruptcy. We reject NOVA's theories and affirm the district court's grant of summary judgment in favor of Greenwich on each of the claims.