**ESTEE LAUDER, INC., Plaintiff,**

v.

**Hyman WATSKY et al., Defendants.**

**No. 70 Civ. 4808.**

United States District Court,
S. D. New York.

Dec. 3, 1970.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiff; Milton Kunen, Howard A. Jacobson, New York City, of counsel.

Hauser, Rosenbaum & Rothbard, Brooklyn, N. Y., for defendant Interstate Cigar Co., Inc.; Noel W. Hauser, Brooklyn, N. Y., of counsel.

Matthew L. Salonger, New York City, for defendants S & J Wholesale Toiletries and Cosmetic Sales, Inc., Janel Sales Corporation, Carlton Drug, Inc., and A. Rosenblum Inc.

Kramer, Lowenstein, Nessen & Kamin, New York City, for defendants Supermarkets General Corporation and Crown Drugs, Inc.; Geoffrey M. Kalmus, New York City, of counsel.

## OPINION

LASKER, District Judge.

Estee Lauder, Inc. ("Lauder"), a manufacturer and distributor of quality cosmetics designed to appeal to the affluent purchaser, moves for a preliminary injunction to restrain the defendants from the distribution, sale, use or manufacture of counterfeit products bearing the Estee Lauder trademarks or otherwise infringing plaintiff's trade name "ESTEE LAUDER" or trademarks "ESTEE LAUDER", "EL", and "YOUTH–DEW", and for other injunctive relief.

Jurisdiction is predicated on 15 U.S. C.A. § 1121 (the Lanham Act) and 28 U.S.C.A. § 1338.

### THE PARTIES

Among the named defendants, J.S.K. Pharmacy, Inc. (sued here as Kanciper Pharmacy Inc.), Etcetera Stores Incorporated, Ja-Lar, Inc., Silver Dollar Stores, Inc., Vogue Cosmetics Inc., and Direct Drugs Inc., have consented to the entry of a preliminary injunction against them, and accordingly do not appear on the motion. Sun Cosmetic Shop Inc. has consented to the entry of a final judgment. Six of the remaining defendants have defaulted on this motion: Hyman Watsky, Hy's Cosmetics Service, Inc., Herman Davidoff, Abrahams Greenlawn Pharmacy, Inc., Ben Bev Inc., and Natco Beauty Supply Center, Inc. The remaining seven defendants, Supermarkets General Corporation, its subsidiary Crown Drugs, Inc., Interstate Cigar Co. Inc., Janel Sales Corporation, A. Rosenblum Inc., and S & J Wholesale Toiletries and Cosmetic Sales Inc., have appeared and oppose the motion.

### THE FACTS

Lauder is a well known manufacturer and distributor of cosmetic products. It owns the registered trademarks "ESTEE LAUDER", "EL" and "YOUTH–

DEW." It has spent substantial sums in advertising and promoting its products under those trademarks throughout the United States and elsewhere, and the good reception of its name is evidenced by annual sales in the range of $50 million. Prior to the commencement of this action, Lauder discovered, as the result of a competent investigation,[1] that its one-ounce size of Youth-Dew bath oil and two-ounce size of Youth-Dew Eau de Parfum spray were being counterfeited by still unknown persons, distributed, and offered for sale to the public by the defendants.

"YOUTH–DEW" is a valid registered trademark owned by Lauder appearing on the package of the products with the registered name "ESTEE LAUDER."

Lauder claims that spurious imitations of its products and packages have been found in New York and eight other states, that the packaging of the items in defendants' possession is nearly identical to the true package, and that only the trained eye can tell the original from the counterfeit.[2] Photographs of the original package and its copy have been attached to the moving papers. At argument on the motion there were displayed to the court copies of the true products and their packages and of the counterfeit counterparts. I find the counterfeits to be all but identical to the real, and this conclusion is not disputed by the defendants, who indeed allege, as a difficulty with which they are faced, the near impossibility of distinguishing the false from the true.

While all the defendants claim that they have not knowingly sold spurious products, only one group, represented by the same counsel, and on the basis of identical affidavits clearly drafted by counsel, dispute that they in fact possess or have sold the counterfeit products.[3]

The issue before the court, therefore, is not whether plaintiff has, on this motion, made a prima facie of trademark infringement or of the power of the court to enjoin such violations, but rather, whether the court should exercise its equitable discretion to grant the requested relief. Plaintiff, arguing that the federal statute has been clearly violated, that the defendants are guilty of unfair competition and misrepresentation as to false marks and merchandise, are misleading and confusing the public and diluting plaintiff's trademarks and trade name under the provisions of Section 368–d of the General Business Law of New York,

1. In early 1970 Lauder retained Interstate Securities Services, Inc. to investigate the distribution and sale of the false merchandise. I.S.S. representatives purchased counterfeit Lauder products at Crown Drug (which had purchased them from S & J), Direct Drug, Abrahams Greenlawn, Ja-Lar, Etcetera Stores, Ben Bev Inc.. Carlton Drug, Kanciper Pharmacy, and Natco. An I.S.S. investigator observed Watsky and Davidoff unloading 35 boxes of what are claimed to be counterfeit Lauder products at Interstate Cigar Co. Lauder was informed by Business Intelligence Group, Inc., that its agents had purchased false Lauder products at Drug City (trade name of Ben Bev Inc.), Silver Dollar. Carlton, Vogue, A. Rosenblum, Ja-Lar, Abrahams Greenlawn, Etcetera, Janel, and Sun Cosmetic.

Plaintiff agrees that Supermarkets General Corporation, parent of Crown Drugs, Inc., does not carry Estee Lauder products, that there is no basis, therefore, for granting the injunction as to it, and the motion for an injunction against Supermarkets has been orally withdrawn by plaintiff's counsel.

2. Apparently because the formula used in the products is a trade secret, no complaint has been made regarding the contents of the spurious product, but only as to the use of the trademarks and trade name on the packaging.

3. The weight to be attached to the affidavits of officers of Carlton Drug Inc., Janel Sales Corporation, S & J Wholesale Toiletries and Cosmetic Sales Inc., and A. Rosenblum Inc., all clients of Matthew L. Salonger, Esq., and all specifically denying that such corporations or any officer or employee of the corporations has ever "knowingly or otherwise sold any counterfeit merchandise bearing the plaintiff's trade marks" must be limited in view of the identicality of the statements contained in the affidavits, clearly drafted by counsel common to the companies.

McKinney's Consol.Laws, c. 20, and in violation of Section 279–n of that statute, claims that there is a clear case for injunctive relief. It stresses the probability of its success upon trial of the merits, the irreparability of harm to it pendente lite, violation of the federal act regardless of the knowledge, intent or good faith of the defendants, and the right of plaintiff and the public to be protected against widespread dissemination of counterfeit packages and products.

The defendants variously argue that to restrain them from the sale of merchandise in their possession would put an undue burden on them to police for plaintiff the distribution of its merchandise; that this would lead to their dropping Lauder products, resulting in an unfair loss of profits; that to grant the injunction would give plaintiff the ultimate relief it seeks before trial; that undue damage would be done them as retailers about to enter the Christmas season if they are put under the burden of investigating every Lauder product sold to ascertain its genuineness; that the damage to their reputation attendant on an injunction against selling counterfeit products would be harsh and unfair in view of their lack of knowledge of the spuriousness of the products; and that plaintiff's true motive in the instant litigation is solely to prevent defendants with whom plaintiff does not want to do business from obtaining Lauder products.

## THE QUESTION OF INJUNCTIVE RELIEF

The criteria generally recognized for the determination of granting injunctive relief are: (1) the probability of plaintiff's succeeding on the merits; (2) irreparability of harm to the plaintiff pendente lite; (3) the balance of hardships between the parties; and (4) where appropriate, as here, the public interest. Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738 (2d Cir. 1953); Studebaker Corp. v. Gittlin, 360 F.2d 692 (2d Cir. 1966). Applying these standards to the case at hand, I find that the motion for a preliminary injunction should be granted to the extent and under the conditions set forth below.

The plaintiff has established a high probability of succeeding at trial. There seems little dispute that the defendants have indeed received and sold the counterfeit packages and products and, as observed above, the counterfeits are so nearly identical to the true that the public will without question be led to believe that the spurious item is the real. Gold Master Corp. v. Miller, 380 F.2d 128 (2d Cir. 1967). This is the precise evil against which the Lanham Act is directed. Nor need the plaintiff show that the defendants acted with knowledge or in bad faith.

"A trademark infringement does not stand or fall upon the state of mind of the infringer. It is the objective fact of the infringement that is all important." 3 Callmann, § 86.1(a), at 1052.

See: Thomson Industries, Inc. v. Nippon Thompson Co. Ltd., 298 F.Supp. 466 (E.D.N.Y.1968); Coty v. Parfums de Grande Luxe, 298 F. 865 (2d Cir. 1924). However, basic fairness to the defendants requires it to be stated that the granting of an injunction here is not predicated upon a finding that any of the defendants have knowingly received or sold the counterfeit products, and I make no such finding.

As it is true that plaintiff has shown it will probably succeed on the merits of the case, so, too, it is demonstrated that without injunctive relief it will be irreparably harmed pendente lite. Lauder's name and reputation as a manufacturer of quality cosmetics, which it has spent large sums over the years to promote and assure, is altogether at stake as long as the spurious packages and products circulate in the market. Such an exposure to forces beyond Lauder's control not only constitutes irreparable damage, but damage the consequences of which cannot be adequately calculated at a later date in money.

It is true that the granting of an injunction may impose hardship on the defendants, but the failure to grant relief would impose a greater hardship on the plaintiff. To the defendants the product involved is one of a large number in which each of them deals; it is a small part of their business. To the plaintiff its name is at stake, and continued injury to its reputation and good will would be a far more serious blow to it than the curtailment of the sale by the defendants would be to them. Furthermore, it is believed that the conditions set forth below as to the granting of the motion will go far towards limiting the hardship which an injunction may impose on defendants.

Finally, it must be observed that the public is entitled to protection in a matter of this kind. It would be irresponsible for a court to permit the defendants, whether in good faith or otherwise, to palm off spurious products on a credulous public. The community is entitled to receive for its money the product which it believes it is buying.

## THE NATURE OF THE RELIEF GRANTED

■ Although an injunction will be granted,[4] the acknowledged difficulties of distinguishing between the spurious and the real packages and products is such that the burden of examining and differentiating between the merchandise should be shared by the plaintiff and the defendants. At the argument on the motion, plaintiff's counsel offered the services of qualified Lauder employees to aid the defendants in examining the Lauder packages and products in defendants' possession to determine whether they are counterfeit or real. The demonstration of the very minor but nevertheless objective differences made at the argument on the motion establishes that such assistance by plaintiff to the defendants is indispensable.

■ Accordingly, the motion for a preliminary injunction is granted on the condition that plaintiff make available to all the defendants the assistance of qualified employees of Lauder, at reasonable times and for reasonable periods, for the purpose of examining the Lauder merchandise presently in the possession of the defendant in order to determine whether it is a real Lauder product or a counterfeit. At the termination of each such examination all merchandise agreed by the plaintiff and the respective defendant to be counterfeit shall be impounded upon terms to be set forth in the decree. In the event that a dispute arises between the plaintiff and any defendant as to whether any such merchandise is in fact counterfeit or real, a Special Master will be appointed by the court to examine the merchandise and report to the court. In the event that it is ultimately established at trial that the products in question are not counterfeit, the plaintiff shall pay the fees and costs of the Master. If it is proven at trial that the disputed merchandise is counterfeit, the defendant in question shall pay such fees and costs.

The motion for a preliminary injunction is granted upon the conditions hereinabove set forth.

Submit order.

4. As indicated at the outset of this opinion, a number of parties have defaulted on this motion. There seems no reason why injunctive relief cannot be granted against the defaulting parties as well as the appearing parties. While neither Rule 55, F.R.Civ.P. (Default) nor Rule 65, F.R.Civ.P. (Injunctions), specifically deals with the question of granting preliminary injunctive relief on default, the two rules read together are construed to authorize such relief. It would be paradoxical to conclude that the court could impose the burden of injunction on a responsible appearing party, yet be deprived of that power as to an irresponsibly defaulting party.