**TRACFONE WIRELESS, INC.,**
a Delaware Corporation,
Plaintiff,

v.

**PAK CHINA GROUP CO. LTD.,** a foreign corporation; New Pak China Trade International Co., a foreign corporation; et al., Defendants.

Case No. 1:10–CV–24386–JEM.

United States District Court,
S.D. Florida.

Feb. 6, 2012.

James Blaker Baldinger, Carlton Fields PA, West Palm Beach, FL, Steven Jeffrey Brodie, Aaron Stenzler Weiss, Carlton Fields, Miami, FL, for Plaintiff.

Olivia D. Griffin, Olivia D. Griffin, Miami, FL, for Defendants.

## FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS PAK CHINA GROUP CO. LTD. AND NEW PAK CHINA TRADE INTERNATIONAL CO.

JOSE E. MARTINEZ, District Judge.

THIS MATTER is before the Court upon Plaintiff TracFone Wireless, Inc.'s ("TracFone") Motion for Default Judgment against Pak China Group Co. Ltd. ("Pak China"), and New Pak China Trade International Co. ("New Pak China") (col-lectively "Defendants") [D.E. No. 79]. Plaintiff's complaint asserts claims for federal trademark infringement, 15 U.S.C. § 1114; federal unfair competition, 15 U.S.C. § 1125; breach of contract; contributory trademark infringement; copyright infringement, 17 U.S.C. § 101 *et seq.*; violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq.*; tortious interference with a contractual right; conspiracy to induce breach of contract; civil conspiracy; and unjust enrichment.

### I. Plaintiff TracFone Wireless, Inc.'s Business

TracFone's Complaint states that TracFone is the largest provider of prepaid wireless telephone service in the United States, and markets its service under the TracFone, Net10, SafeLink and Straight Talk brands (hereinafter referred to as "TracFone Prepaid Phones" or "Phones"). [DE 6 at ¶ 33]. TracFone's Complaint further states that TracFone's customers prepay for wireless service by purchasing TracFone airtime cards and wireless Phones specially manufactured for TracFone. *Id.* TracFone's Complaint states that TracFone subsidizes its customers' acquisition of its Phones by selling the Phones to retailers for much less than the Phones cost TracFone from the manufacturers. *Id.* at ¶ 35. TracFone states that it recoups this subsidy by selling prepaid airtime to customers who buy subsidized Phones. *Id.* TracFone states that it takes several steps to protect its investment in the subsidized Phones, which are designed to make sure that the Phones can only be used on TracFone's wireless network. *Id.* at ¶¶ 30–31.

TracFone states in connection with advertising and selling its Phones, TracFone has used, and continues to use, several trademarks (the "Marks") in commerce in-

cluding the marks TracFone, NET10, SafeLink and Straight Talk, which it states constitute the lawful, valued, subsisting and exclusive property of TracFone and that TracFone and its authorized, affiliated agents are permitted to use the Marks. *Id.* at ¶¶ 38–39.[1]

TracFone states that its Marks are well known and established to customers and the trade as symbols identifying and distinguishing TracFone's products and services and signify distinctive products and services of high quality and provide actual notice that TracFone's Phones are intended for use solely within TracFone's network. *Id.* TracFone states that the Marks have become an intrinsic and essential part of the valuable goodwill and property of TracFone. *Id.*

TracFone states that it has learned that although large quantities of its TracFone Prepaid Phones are being purchased at retailers throughout the United States, a significant number of these TracFone Prepaid Phones are not being activated for use on the TracFone network. *Id.* at ¶ 49. According to TracFone, instead, entities and individuals are purchasing and selling TracFone Prepaid Phones in bulk quantities for use outside of the TracFone Prepaid Wireless Service and Coverage Area.

*Id.* at ¶ 50. TracFone further states that "the Phones are removed from their original packaging, shipped overseas, and unlocked or reflashed." *Id.*[2] TracFone claims that as a result of these actions, TracFone loses both: (1) the subsidy that it provided when selling the Phone to the retailer; and (2) the revenue from selling airtime on that handset. *Id.* at ¶ 52.

## II. *Defendants' Business*

According to TracFone, Defendants are also engaged in unlawful business practices involving the unauthorized and unlawful bulk purchase and resale of TracFone Prepaid Phones, unauthorized and unlawful computer unlocking or reflashing of TracFone Prepaid Phones, alteration of TracFone's copyrighted and proprietary software installed in the Phones, trafficking of the Phones for profit, and for other violations of Federal statutory law (the "Bulk Resale Scheme"). *See* [DE 6 at ¶ 1]. As alleged in the Amended Complaint, documents in TracFone's possession demonstrate that Defendants trafficked thousands of TracFone Prepaid Phones in furtherance of the Bulk Resale Scheme. *See* [DE 6]. Defendants' participation in the Bulk Resale Scheme has caused damage and sub-

---

1. In particular, TracFone owns and has also used the following trademarks: (1) Incontestable United States Trademark Registration No. 2,114,692 for TracFone, based on a first use date of June 30, 1996; (2) United States Trademark Registration Nos. 3,224,929 and 3,222,623 for TracFone Nationwide Prepaid Wireless and Design based on a first use dates of December 31, 2005; (3) United States Trademark Registration No. 3,118,250 for NET10, based on a first use date of March 1, 2005; (4) United States Trademark Registration Nos. 3,255,754, 3,253,506, and 3,251,389 for NET10 Pay As You Go Made Simple and Design, based on first use dates of December 31, 2005; (5) United States Trademark Registration No. 3,630,321 for SafeLink Wireless and Design, based on a first use date of Sep-

tember 12, 2008; and (6) Straight Talk and Straight Talk and Design, based on a first use date of May 29, 2009. *Id.* at ¶ 37.

2. The process of "unlocking" or "reflashing" TracFone Prepaid Phones "involves circumventing the electronic protections installed in the handset, and then erasing, removing and/or disabling the TracFone Prepaid Software." *Id.* at 51. Once a TracFone Prepaid Phone has been unlocked or reflashed, it is no longer operable within TracFone's prepaid wireless virtual network, and is operable on other cellular networks. *Id.* TracFone no longer has a revenue source to recoup the invested subsidy on that phone. *Id.* at 52; *see also TracFone Wireless, Inc. v. Anadisk, LLC*, 685 F.Supp.2d 1304, 1308 (S.D.Fla.2010).

stantial and irreparable harm to TracFone. *See id.*

## III. *The Present Litigation*

As a result of Defendants' business activities, TracFone asserted claims against Defendants for Federal Trademark Infringement in violation of 15 U.S.C. § 1114; Federal Unfair Competition in violation of 15 U.S.C. § 1125; Breach of Contract; Contributory Trademark Infringement; Copyright Infringement of Software in violation of Title 17 of the United States Code; Circumvention of Copyrighted Software Protection System and Trafficking in Circumvention Technology in violation of the DMCA; Tortious Interference with a Contractual right in Violation of Florida Common Law; Conspiracy to Induce Breach of Contract; Civil Conspiracy in Violation of Florida Common Law; and Unjust Enrichment in Violation of Florida Common Law. The Court finds that all of the allegations in the complaint are well pled, and they are deemed admitted by virtue of Defendants' default. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1307 (11th Cir.2009) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975)). TracFone has therefore succeeded in proving its claims and Defendants are hereby permanently enjoined and liable to TracFone for the damages set forth herein.

### *JURISDICTION AND VENUE*

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1338, and 17 U.S.C. § 1203 because TracFone's claims arise under federal law, specifically, the United States Copyright Act, Title 17 of the United States Code, and United States Trademark Act, Title 15 of the United States Code. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over TracFone's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

This Court has personal jurisdiction over Defendants because Defendants have had continuous and substantial business connections to the State of Florida, including conducting business with companies located in Florida. Defendants are further subject to the personal jurisdiction of this Court pursuant to: Fla. Stat. § 48.193(*l*)(a) because Defendants have conducted, engaged in and carried out business ventures within the State of Florida; § 48.193(1)(b) because Defendants have committed tortious acts within the State of Florida; and § 48.193(1)(g) by failing to perform acts required by a contract to be performed in the State of Florida. Moreover, Defendants are also subject to this Court's personal jurisdiction pursuant to § 48.193(2) because Defendants have engaged in substantial and not isolated business activity within the State of Florida.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b), and 28 U.S.C. § 1400, because a substantial part of the events or omissions giving rise to the claim occurred in this District, the impact of Defendants' misconduct occurred in this District, and Defendants are subject to personal jurisdiction in this District.

### *TracFone's Service of Process on Defendants*

■ TracFone proffers that it has effectuated service on Defendants pursuant to Fed.R.Civ.P. 4(f)(2)(C)(ii), which requires that the mailing be addressed and dispatched by the Clerk of the Court. Specifically, Fed.R.Civ.P. 4(f)(2)(C)(ii) provides, in pertinent part, that if not prohibited, "an individual . . . may be served at a place not within any judicial district of the United States: . . . by (ii) using any form

of mail that the clerk addresses and sends to the individual and that requires a signed receipt." Fed.R.Civ.P. 4(f)(2)(C)(ii). "Thus, in addition to service through the Central Authority of each country, 'Article 10(a) [of the Hague Service Convention] provides that, if the State of destination does not object, the Hague Convention does not change the freedom to send judicial documents, by postal channels, directly to persons abroad.'" *TracFone Wireless, Inc. v. Bequator Corp., Ltd.,* 717 F.Supp.2d 1307, 1309 (S.D.Fla.2010) (citing *Curcuruto v. Cheshire,* 864 F.Supp. 1410, 1411 (S.D.Ga.1994)).

The Court further notes that this district, along with several district courts within the Eleventh Circuit and many other federal circuit courts and district courts, have held that Article "10(a) permits service by mail unless the country has objected to this method." *Bequator,* 717 F.Supp.2d at 1309 (citing *Curcuruto v. Cheshire,* 864 F.Supp. at 1411); *Conax Fla. Corp. v. Astrium Ltd.,* 499 F.Supp.2d 1287, 1293 (M.D.Fla.2007) (authorizing service by mail upon finding that "Article 10(a) is applicable to service of process."); *Lestrade v. United States,* 945 F.Supp. 1557 (S.D.Fla.1996) (holding that service of IRS petition by mail satisfied Hague Service Convention); *see also Brockmeyer v. May,* 383 F.3d 798, 802 (9th Cir.2004) (holding that Article 10(a) does include service of process by mail, reasoning that "send judicial documents" encompasses "service of process," and that such method

is "consistent with the purpose of the Convention to facilitate international service of judicial documents."); *Research Sys. Corp. v. IPSOS Publicite,* 276 F.3d 914, 926 (7th Cir.2002), *cert. denied,* 537 U.S. 878, 123 S.Ct. 78, 154 L.Ed.2d 133 (2002); *Ackermann v. Levine,* 788 F.2d 830, 838–40 (2d Cir.1986); *Robins v. Max Mara, U.S.A., Inc.,* 923 F.Supp. 460, 469 (S.D.N.Y.1996); *Borschow Hosp. and Med. Supplies, Inc. v. Burdick–Siemens Corp.,* 143 F.R.D. 472 (D.P.R.1992); *Patty v. Toyota Motor Corp.,* 777 F.Supp. 956 (N.D.Ga.1991); *Chrysler Corp. v. Gen. Motors Corp.,* 589 F.Supp. 1182 (D.D.C.1984); *Mainstream Media, EC v. Riven,* No. C 08–3623 PJH, 2009 WL 2157641, at *3 (N.D.Cal. July 17, 2009) (noting that previously the "court granted [Plaintiff's] motion for alternative service on [Defendant] pursuant to Federal Rule of Civil Procedure 4(f)(3), directing that the prior delivery of service documents by [Plaintiff] to [Defendant] via e-mail, international mail, and international courier (Federal Express) was effective service of process."); *Ehrenfeld v. Salim a Bin Mahfouz,* 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005) (approving service by certified mail or FedEx); *Broadfoot v. Diaz (In re Int'l Telemedia Assoc.),* 245 B.R. 713, 719–20 (Bankr.N.D.Ga.2000) (authorizing service via facsimile, ordinary mail, and email).[3]

TracFone has previously submitted evidence to this Court indicating Hong Kong's position with respect to particular articles of the Hague Service Convention,

---

**3.** *But see Nuovo Pignone, SpA v. Storman Asia M/V,* 310 F.3d 374, 384 (5th Cir.2002); *Bankston v. Toyota Motor Corp.,* 889 F.2d 172, 174 (8th Cir.1989). However, the Court notes that Plaintiff has submitted a letter from the United States Department of State to the Administrative Office of the United States Courts, dated March 14, 1990 in response to the *Bankston* decision, wherein the United States Department of State stated its belief "that the decision of the Court of Appeals in

*Bankston* is incorrect to the extent that it suggests that the Hague Convention does not permit as a method of service of process the sending of a copy of a summons and complaint by registered mail to a defendant in a foreign country." *See* March 14, 1990 letter from Alan J. Kreczko, Deputy Legal Advisor, United States Department of State, to Administrative Office of the United States Courts attached to TracFone's Motion as Exhibit D.

with respect to Article 10(a), Hong Kong has "no opposition." [DE 9–4] The Court thus finds that Hong Kong *does not object* to judicial documents being sent by postal channels pursuant to Article 10(a). *See also Bequator,* 717 F.Supp.2d at 1309. The Court thus finds that TracFone's service of the Summons and Amended Complaint on Defendants sent via international express mail and via FedEx directed to their President, General Manager, or other executive officer at their respective headquarters, was sufficient, pursuant to Fed.R.Civ.P. 4(f)(2)(C)(ii).

The Court further orders that, pursuant to Fed.R.Civ.P. 12(a)(1)(A), Defendants' answers to TracFone's Amended Complaint were required to have been filed within twenty-one days after receipt of the copy of the Summons and Amended Complaint, to be sent via United States postal service international express mail and via FedEx and directed to Defendants' President, General Manager, or other executive officer at Defendants' business locations in Hong Kong. *See TracFone,* 717 F.Supp.2d at 1310; *SCRA Corp. v. Trajes Internationales de Costa Rica, S.A.,* No. 98–6245, 1999 WL 718650, at *1–3 (E.D.Pa., Aug. 30, 1999) (noting that the time periods for responding to a complaint set-forth in Fed.R.Civ.P. 12(a)(1)(A) apply to a defendant served abroad). Defendants were required to file their answers on or before June 30, 2011. *See* Weiss Aff. at ¶¶ 8–9; [D.E. 48; D.E. 49]. As Defendants have failed to answer, they are in default.

 A "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," as set forth in the operative complaint. *Eagle Hosp. Physicians,* 561 F.3d at 1307. "With regard to the measure of damages, the allegations contained in the complaint are not considered admissions by virtue of the default; [r]ather, the Court determines the amount and character of damages to be awarded." *Zambra-*

*na v. Geminis Envios Corp.,* No. 08–20546–CIV, 2009 WL 1585995, at *2 (S.D.Fla. June 4, 2009) (internal quotations and citations omitted). Accordingly, TracFone can establish the amount of damages by submitting sufficient evidence to support the request for damages. *Id.* (internal quotations omitted). In assessing damages without a hearing, it is appropriate for the Court to utilize "mathematical calculations." *Adolph Coors Co. v. Movement Against Racism and the Klan,* 777 F.2d 1538, 1544 (11th Cir.1985).

## DISCUSSION

### I. *TracFone's Trademark Related Claims (Counts One, Two and Four)*

Section 32(1) of the Lanham Act protects against the use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Section 43(a) of the Lanham Act states that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods, services, or commercial activities by another person, or,
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic ori-

gin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1114(1)(a).

"[T]he Court interprets this Section [§ 43(a) ] as having created a federal cause of action for infringement of unregistered trademark or trade dress and concludes that such a mark or trade dress should receive essentially the same protection as those that are registered." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 776, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (Stevens, J., concurring). Thus, in order to prevail on a claim of trademark infringement under Sections 32 and 43, TracFone must demonstrate that (1) it has a valid, protectable mark and (2) that defendants' use of the mark is "likely to cause confusion, or to cause mistake, or to deceive." *See* 15 U.S.C. § 1114(1)(a).

■ Contributory infringement extends to "all those who knowingly play a significant role in accompanying the unlawful purpose." *Stix Prods., Inc. v. United Merchs. & Mfrs., Inc.*, 295 F.Supp. 479, 500 (S.D.N.Y.1968); *see also Estee Lauder, Inc. v. Watsky*, 323 F.Supp. 1064, 1067 (S.D.N.Y.1970). "If a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456

U.S. 844, 854, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982); *see also Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 828 (5th Cir. 1998).

## A. Valid and Protectable Mark

■ Pursuant to Section 7(b) of the Lanham Act, a certificate of registration of a trademark issued by the United States Patent and Trademark Office is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(b). Moreover, the Eleventh Circuit strongly presumes registered marks to be valid. *See Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1562 (11th Cir.1991); *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184–85 (5th Cir. 1980). If a registered trademark is incontestable, its validity, ownership, and exclusive right of use are conclusive and irrebuttable, subject only to a limited number of defenses. *See* 15 U.S.C. § 1115(b); *Soweco*, 617 F.2d at 1184–85.

In addition to the legal presumption afforded to registered trademarks, TracFone's Marks are also valid because they have acquired secondary meaning.[4] Indeed, TracFone's Marks are well known and established to customers and the trade as symbols identifying and distinguishing TracFone's products and services, and signifying distinctive services of exceptional quality. [D.E. 6 at ¶ 33] As a result of the

---

4. The Eleventh Circuit has set forth a number of factors to be considered in determining whether a mark has acquired secondary meaning, including:
 (1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the [mark] and the plaintiff's product or business; and (4) the extent to which the public actually identifies the [mark] with the plaintiff's product or venture.
 *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1513 (11th Cir.1984).

high quality of TracFone's products, services, sales, promotion and advertising, the Marks have become an intrinsic and essential part of the valuable goodwill and property of TracFone. *Id.*

## B. Likelihood of Confusion

■ The Eleventh Circuit considers seven factors to determine whether there is a likelihood of confusion: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media used; (6) defendant's intent; and, (7) actual confusion. *See Dieter v. B & H Indus. of Sw. Fla., Inc.,* 880 F.2d 322, 326 (11th Cir.1989). Each of these factors demonstrates that Defendants' products are likely to cause confusion.

### 1. Type of Mark

■ Courts determine the level of protection to be afforded a mark based upon the mark's strength: the stronger the mark, the greater the scope of protection. *Frehling Enters., Inc. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1335 (11th Cir.1999). Marks can be grouped into one of four categories: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary." *Id.* Third party use of the Marks is another important factor in determining a mark's strength—"[t]he less that third parties use the mark, the stronger it is, and the more protection it deserves." *Frehling Enters., Inc.,* 192 F.3d at 1336. The final factor to consider in determining the strength of a mark is whether it is "incontestable"—the strength of the mark is enhanced if the United States Patent and Trademark Office has declared a mark "incontestable." *Id.*

■ TracFone's Marks—which are arbitrary marks—are due considerable protection based on the foregoing factors. An arbitrary mark, such as 'Sun Bank' when

applied to banking services, is one that bears no relationship to the product and is the strongest types of mark. *Id.* at 1335–36. Just as the "Sun Bank" mark is arbitrary as applied to banking services, TracFone's Marks are arbitrary as applied to prepaid phone service and are entitled to substantial protection. *Id.* at 1336. Second, only TracFone and its affiliates use the Marks. *See Frehling Enters., Inc.,* 192 F.3d at 1336 (finding that no third parties use the marks is another indication of the strength of the Marks). Finally, the TracFone trademark is "incontestable" and, therefore, entitled to another layer of protection.

### 2. Similarity of the Marks

■ In determining the similarity of the marks, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Id.* at 1337. In this case, the Marks on the infringing Phones are identical but the infringing phones no longer conform to TracFone's specifications but still contain the actual TracFone Mark on the handset. Consumers only learn that the Phone no longer operates as designed upon attempting to use the infringing phone for its intended purpose of accessing the TracFone prepaid wireless system. The Defendants' infringing scheme thus causes confusion among consumers. *See Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.,* 303 F.3d 1242, 1248 (11th Cir.2002).

### 3. Similarity of the Products the Marks Represent

■ "[T]he greater the similarity between the products and services, the greater the likelihood of confusion." *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.,* 756 F.2d 1525, 1530

(11th Cir.1985). The Defendants' infringing phones appear virtually identical to unaltered TracFone Phones.

#### 4. Similarity of the Parties' Retail Outlets and Customers

 "This factor takes into consideration where, how, and to whom the parties' products are sold." *Frehling Enters., Inc.*, 192 F.3d at 1339. Defendants' infringing phones are sold through internet retail outlets and appear to the customer as an authentic TracFone. Defendants are targeting the same consumers as TracFone—individuals looking for affordable, high quality wireless telephones. *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1541 (11th Cir.1986) ("[l]ikelihood of confusion is more probable if the products are sold through the same channels to the same purchasers").

#### 5. Similarity of Advertising Media

 This factor looks to each party's method of advertising. *Id.* Although TracFone's advertising is much more extensive than Defendants', Defendants also advertise on the internet. *See Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir.1980) (finding the greater the similarity between the advertising campaigns, products and services, the greater the likelihood of confusion).

#### 6. Defendants' Intent

 This factor looks to whether "a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation." *Frehling Enters., Inc.*, 192 F.3d at 1340. Likelihood of confusion can be demonstrated as a matter of law if this factor is present. *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179 (11th Cir.1994); *Frehling Enters., Inc.*, 192 F.3d at 1340. The infringing scheme here includes selling phones with TracFone's Marks intact,

which demonstrates that they seek to derive a benefit from TracFone's business reputation. Moreover, the Defendants knowingly played a significant role in the bulk purchasing, unlocking, reflashing and reselling the Phones with the Marks intact.

#### 7. Actual Confusion

 "The law is well settled in this circuit that evidence of *actual* confusion between trademarks is not necessary to a finding of *likelihood* of confusion." *E. Remy Martin*, 756 F.2d at 1529; *Montgomery v. Noga*, 168 F.3d 1282, 1302 (11th Cir.1999) ("[W]e have held that a plaintiff is not required to provide evidence of actual confusion in order to prove likelihood of confusion."). Adopting an identical mark "with the intent of deriving benefit from the reputation of [Plaintiff's mark] may alone be enough to justify the inference that there is confusing similarity." *AmBrit*, 812 F.2d at 1542; *see also Int'l Cosmetics Exch., Inc.*, 303 F.3d at 1248–49 (holding that concurrent use of same mark on similar product was sufficient to demonstrate a likelihood of confusion); *Babbit Electronics, Inc.*, 38 F.3d at 1179–80 (finding a likelihood of confusion despite a lack of evidence of actual confusion).

Based on the evidence presented, the parties sell virtually identical looking, directly competing products to the same purchasers through the same channels of trade utilizing the same advertising vehicles. Therefore, there is a strong likelihood of confusion as to the source of the products.

#### C. Resale of a Genuine Trademarked Product And the Material Difference Exception

 Defendants' products are also infringing because they are materially different than TracFone's genuine Phones. The first sale doctrine does not apply when

an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner. *See Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir.2001); *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302–03 (3d Cir.1998); *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1087 (9th Cir. 1998) (quoting *Warner–Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir.1996)) (holding that a non-conforming product is not genuine and "its distribution constitutes trademark infringement"); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1302 (5th Cir.1997); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 644 (1st Cir.1992); *Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.*, 816 F.2d 68, 73 (2d Cir. 1987). Indeed, materially different products that have the same trademark may confuse consumers and erode consumer goodwill toward the mark. *See Iberia Foods*, 150 F.3d at 303; *Nestle*, 982 F.2d at 638.

A material difference is one that consumers consider relevant to a decision about whether to purchase a product. *See Martin's Herend Imports*, 112 F.3d at 1302; *Nestle*, 982 F.2d at 641. Because a myriad of considerations may influence consumer preferences, the threshold of materiality must be kept low to include even subtle differences between products. *See Iberia Foods*, 150 F.3d at 304; *Nestle*, 982 F.2d at 641. The resale of a trademarked product that has been altered, resulting in physical differences in the product, may constitute a material difference giving rise to a trademark infringement claim. *See Nestle*, 982 F.2d at 643–44 (applying the material difference exception, e.g., differences in the composition, presentation and shape of premium chocolates); *Original Appalachian Artworks*, 816 F.2d at 73 (applying the material difference exception where the infringing Cabbage Patch Kids dolls had Spanish language adoption papers and birth certificates, rather than English); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384–85 (9th Cir.1984) (finding willful infringement where the defendant sold genuine Sealy mattresses together with non-Sealy foundations); *Singer Mfg. Co. v. Briley*, 207 F.2d 519 (5th Cir.1953) (sale of reconditioned trademarked goods with no mention that the product was reconditioned constitutes trademark infringement); *Joy Mfg. Co. v. CGM Valve & Gauge Co., Inc.*, 730 F.Supp. 1387 (S.D.Tex.1989) (finding intentional infringement where the defendant used unauthorized nameplates bearing plaintiff's mark on valves that defendant refurbished to look like new, but failed to indicate them as used or reconditioned).

For example, reselling products with inferior warranties also constitutes a material difference. *See Perkins School for the Blind v. Maxi–Aids, Inc.*, 274 F.Supp.2d 319, 324 (E.D.N.Y.2003) (holding that plaintiff asserted a valid trademark infringement claim where defendant sold genuine Perkins Braillers products with an inferior warranty); *Movado Grp., Inc. v. Matagorda Ventures, Inc.*, No. 98 Civ. 6223 LMM, 2000 WL 1855120, at *4 (S.D.N.Y. Dec. 19, 2000) (finding that the warranty can make the products sufficiently significantly different to constitute infringement). Several courts have held that the purchase and resale of goods solely within the United States may constitute infringement when differences exist in quality control or the products themselves. *See Enesco*, 146 F.3d at 1087; *Warner–Lambert*, 86 F.3d at 6; *Matrix Essentials v. Emporium Drug Mart, Inc. of Lafayette*, 988 F.2d 587, 590–91 (5th Cir.1993); *Shell Oil Co. v. Commercial Petroleum Inc.*, 928 F.2d 104, 107 (4th Cir.1991).

Defendants knowingly played a significant role in the resale of TracFone Phones

that are materially different than those sold by TracFone. For instance, the warranty information is removed, which invalidates the warranty in its entirety. [D.E. 6 at ¶ 77] Furthermore, the TracFone packaging is removed and the handsets are sold in packaging that is not approved by TracFone's quality controls. *Id.* at ¶ 64; *TracFone v. Anadisk,* 685 F.Supp.2d 1304 (S.D.Fla.2010); *see also Enesco,* 146 F.3d at 1087; *Warner–Lambert,* 86 F.3d at 6; *Matrix Essentials,* 988 F.2d at 590–91; *Shell Oil Co. v. Commercial Petroleum Inc.,* 928 F.2d 104, 107 (4th Cir.1991) (differences exist in quality control or the products themselves may result in infringement). Thus, under the material difference exception, the Defendants' actions constitute trademark infringement.[5]

## II. *TracFone's Breach of Contract Claim (Count Three)*

 To prevail on a cause of action for breach of contract, a party must show: (1) the existence of a valid and enforceable contract, (2) breach of the contract, and (3) damages. *See AIB Mortgage Co. v. Sweeney,* 687 So.2d 68, 69 (Fla. 3d DCA 1997). Moreover, Florida law provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Fla. Stat. § 672.204(1) (adopting U.C.C. 2–204). This statute includes "shrinkwrap contracts" like the one at issue, where an agreement becomes effective as soon as a customer opens the product. *Tracfone Wireless, Inc. v. Access Telecom, Inc.,* 642 F.Supp.2d 1354, 1364 (S.D.Fla.2009).

 In "Florida and the federal circuits, shrinkwrap . . . agreements are valid and enforceable contracts." *Salco Distribs., LLC v. iCode, Inc.,* No. 8:05–CV–642–T–27TGW, 2006 WL 449156, at *2 n. 5 (M.D.Fla. Feb. 22, 2006) (holding purchaser of software product was bound by terms of shrinkwrap agreement upon opening the packaging of the product, reasoning that a "vendor, as master of the offer, may invite acceptance by conduct and may propose limitations on the kind of conduct that constitutes acceptance. A buyer may accept by performing the acts the vendor proposes to treat as acceptance.") (quoting *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1452 (7th Cir.1996)); *see also Microsoft Corp. v. Big Boy Dist. LLC,* 589 F.Supp.2d 1308, 1320 (S.D.Fla. 2008) (enforcing agreement against a downstream purchaser whose association with the manufacturer included indirect contacts through another party); *Siedle v. National Ass'n of Securities Dealers, Inc.* 248 F.Supp.2d 1140 (M.D.Fla.2002) (upholding the validity of a click-wrap agreement); *Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc.,* 743 So.2d 627 (Fla. 1st DCA 1999) (discussing the enforceability of a forum selection clause contained in a license agreement affixed to the outside of the software packaging where packaging displayed a sticker that provided "[b]y opening this packet, you indicate your acceptance of the [plaintiff's] license agreement.").

 The outside retail packaging of TracFone's Phones contains conspicuous language restricting the use of the Phones for TracFone Prepaid Wireless service and prohibits the consumer from tampering or altering the software or hardware in the Phone. The language provides in part "[b]y purchasing or opening this package, you are agreeing to these terms and the terms and conditions of service in the enclosed user guide." (Complaint ¶ 40). Accordingly, an enforceable contract exists

---

5. Because TracFone has elected to collect only statutory damages under the DMCA, the Court will not discuss the damages TracFone has suffered as a result of this infringement.

between the parties as to the Defendants' use of the Phones and the Defendants have breached the parties' contract by, *inter alia*, purchasing TracFone Prepaid Phones with the specific intent to reflash or unlock the Phones and ship the Phones outside of the United States. *Id.* at ¶ 94. Because TracFone has elected to collect only statutory damages under the DMCA, the Court will not discuss the damages TracFone has suffered as a result of this breach.

## III. *TracFone's Copyright and DMCA Claims (Counts Five, Six and Seven)*

### A. TracFone's Copyright Claims

 To establish copyright infringement, TracFone must prove: 1) ownership of a valid copyright, and 2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1540 (11th Cir.1996). In the context of computer software, as is the case for TracFone, when the defendant has engaged in literal or verbatim copying of all of the protected source code, there is sufficient evidence to authorize a finding of infringement. *See Bateman,* 79 F.3d at 1544 n. 25; *see also Montgomery v. Noga,* 168 F.3d 1282, 1292 (11th Cir.1999) (upholding copyright claim based on copying over seventy percent of the source code from original version in which the claimant owned a registered copyright).

TracFone owns United States Copyright Registration No. TX0006515894 for its computer program for cellular handset-resident prepaid system. [D.E. 6 at ¶ 40] Pursuant to the copyright application, the software was created in 2002 and first used in commerce on January 1, 2003. *Id.* at Exhibit C. The application for registration was filed with the Library of Congress on September 15, 2006. *Id. A* certificate of copyright registrations creates a rebuttable presumption that the copyright is valid. *See Montgomery,* 168 F.3d at 1292; 17 U.S.C. § 410(c) ("the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate."). Thus, TracFone has a valid copyright registration.

 Defendants and/or their co-conspirators' actions in reflashing or otherwise modifying the federally copyrighted TracFone Prepaid Software, without TracFone's authority or consent, creates an unauthorized reproduction and derivate work of the TracFone Prepaid Software. [D.E. 6 at ¶¶ 101–102] Therefore, TracFone's copyright has been infringed. Because TracFone has elected to collect only statutory damages under the DMCA, the Court will not discuss the damages TracFone has suffered as a result of this infringement.

### B. DMCA Violations

17 U.S.C. § 1201(a)(1) states that:

No person shall circumvent a technological measure [6] that effectively controls access to a work [7] protected under this title.

---

6. "[T]o 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A).

7. "[A] technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B).

17 U.S.C. § 1201(a)(2) states that:

No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—

(A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;

(B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or,

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

■ The TracFone Prepaid Software contains technological measures that in the ordinary course of the measures' operation require the application of information, or a process or a treatment, with TracFone's authority, to gain access to the proprietary software. [D.E. 6 at ¶ 109] TracFone did not give Defendants or their co-conspirators authority to reflash, unlock, or otherwise to avoid, bypass, remove, disable, deactivate, or impair the technological measures for effectively controlling access to and operation of the TracFone Prepaid Software. *Id.* at ¶¶ 111–112. Moreover, the Defendants acted, and/or knowingly engaged in a conspiracy, to avoid, bypass, remove, disable, deactivate, or impair TracFone's technological measure for effectively controlling access to the proprietary software without TracFone's authority. *Id.* at ¶ 113. Defendants engaged in this conduct for the purpose of reselling the altered devices for a profit, and not for the sole purpose of lawfully connecting to a

wireless telephone communication network. *Id.* at ¶ 114.

Further, Defendants and/or their co-conspirators are in possession of certain instrumentalities that avoid, bypass, remove, disable, deactivate, or otherwise impair the technological measures within the TracFone Prepaid Software that effectively control access to the proprietary TracFone Prepaid Software. *Id.* at ¶ 118. Accordingly, Defendants are knowingly facilitating co-conspirators who are, trafficking in the service of circumventing TracFone's technological measures that effectively control access to TracFone's Prepaid Software by offering to the public its alteration service for a fee. *Id.* at ¶ 119. Based on the foregoing, the Defendants have violated the DMCA and TracFone is entitled to recover statutory damages for Defendants' violation.

Pursuant to 17 U.S.C. § 1203(c)(3)(A), TracFone is entitled to recover statutory damages "of not less than $200 or more than $2,500" for each TracFone Prepaid Phone that the Defendants altered, or sold as part of a conspiracy to alter, in furtherance of the Bulk Resale Scheme. *See Stockwire Research Group, Inc. v. Lebed,* 577 F.Supp.2d 1262, 1268 (S.D.Fla.2008) (awarding statutory damages per act of circumvention in the total amount of $2,357,200.00); *see also Microsoft Corp. v. Silver Star Micro, Inc.,* No. 1:06–cv–1350–WSD, 2008 WL 115006, at *9 (N.D.Ga. Jan. 9, 2008) (awarding the statutory maximum for each of defendant's acts of circumvention); *Sony Computer Entm't Am., Inc. v. Divineo, Inc.,* 457 F.Supp.2d 957, 967–68 (N.D.Cal.2006) (awarding statutory damages in amount of $5,791,400.00 under the DMCA in a default judgment against defendant); *Sony Computer Entm't Am., Inc. v. Filipiak,* 406 F.Supp.2d 1068, 1074 (N.D.Cal.2005) (entering final judgment against defendant for $6,018,700.00 in stat-

utory damages under the DMCA based on defendant's sale of 7194 infringing items); *Coxcom, Inc. v. Chaffee,* No. CA05–107S, 2007 WL 1577708, at *7 (D.R.I. May 31, 2007) ("Courts have interpreted this provision [17 U.S.C. § 1203(c)(3)(A) ] to authorize an award of statutory damages *'for each device sold'*") (emphasis added) (quoting *Filipiak,* 406 F.Supp.2d at 1074).

Business records produced by TracFone demonstrate that Defendant Pak China altered or sold *at minimum* 1,000 TracFone Prepaid Phones in furtherance of the Bulk Resale Scheme. *See* [D.E. 6] These business records demonstrate that Defendant New Pak China altered or sold as part of a conspiracy to alter *at minimum* 15,083 TracFone Prepaid Phones in furtherance of the Bulk Resale Scheme in violation of the DMCA. *Id.* The sale of these Phones by the Defendants have caused damage and substantial and irreparable harm to TracFone. *Id.* at ¶¶ 124, 126. Furthermore, Defendant's actions were willful and necessitate an award at the maximum statutory amount. *See Filipiak,* 406 F.Supp.2d at 1075 (awarding the maximum statutory award per circumvention based, in part, on defendant's willful violations of the DMCA). Accordingly, TracFone is awarded statutory damages against Defendant New Pak China the maximum amount of $2,500,000.00. 17 U.S.C. § 1203(c)(3)(A); *see also Divineo, Inc.,* 457 F.Supp.2d 957; *Filipiak,* 406 F.Supp.2d 1068; *Chaffee,* 2007 WL 1577708, at *7. Additionally, TracFone is awarded statutory damages against Defendant Pak China the maximum amount of $37,707,500.00. *Id.*

## IV. *TracFone's Tortious Interference Claim (Count Nine)*

▮ To prevail on a claim of tortious interference, TracFone must show: "(1) the existence of a business relationship or an enforceable contract, (2) knowledge of the relationship on the part of defendant,

(3) an intentional and unjustified interference with the relationship by defendant, and (4) damage to the plaintiff as a result of the breach of the relationship." *Carl v. Republic Security Bank,* 282 F.Supp.2d 1358, 1371–72 (S.D.Fla.2003); *see also Tamiami Trail Tours, Inc. v. Cotton,* 463 So.2d 1126, 1127 (Fla.1985) (elements of tortious interference with a business relationship); *Wackenhut Corp. v. Maimone,* 389 So.2d 656, 657 (Fla. 4th DCA 1980) (elements of tortious interference with a contractual relationship).

▮ TracFone has properly established the existence of an enforceable contract. [D.E. 6 at ¶¶ 94–95, 127–133] Defendants knew about the contractual relationship and, despite its knowledge, it intentionally and unjustifiably interfered with the relationship. *Id.* at ¶¶ 127–133. Defendants' actions caused TracFone to suffer damages. *Id.* at ¶ 131. Because TracFone has elected to collect only statutory damages under the DMCA, the Court will not discuss the damages TracFone has suffered as a result of this tortious interference.

## V. *TracFone's Conspiracy Claims (Counts Eight, Nine and Ten)*

▮ To properly state a claim for civil conspiracy, a plaintiff must allege "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Fla. Fern Growers Assoc., Inc. v. Concerned Citizens of Putnam Cty.,* 616 So.2d 562, 565 (Fla. 5th DCA 1993).

▮ The evidence shows that Defendants worked in concert with other individuals who were engaged in the unlawful bulk purchasing, reflashing, and sale of the altered TracFone Phones. [D.E. 6 at

¶ 138]. Furthermore, as a result of the conspiracy, TracFone has suffered damages in the form of lost sales, lost profits, loss of ability to control the quality of its product, inability to supply retailers with sufficient volume of Phones, and loss of business reputation and goodwill. [D.E. 6 at ¶¶ 71, 126, 131, 136]. Accordingly, Defendants have actively participated in a conspiracy to induce breach of contract and a conspiracy in violation of Florida common law. *Fla. Fern Growers Assoc.*, 616 So.2d at 565. Because TracFone has elected to collect only statutory damages under the DMCA, the Court will not discuss the damages TracFone has suffered as a result of this unlawful conspiracy.

## VI. *TracFone's Unjust Enrichment Claim (Count Eleven)*

■ To prevail on a cause of action for unjust enrichment, a plaintiff must show that: 1) a benefit was conferred on defendant, 2) defendant had knowledge of the benefit conferred, 3) defendant accepted and retained the benefit, and 4) it would be inequitable for defendant to retain the benefit without compensation to the plaintiff. *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So.2d 672, 675 (Fla. 3d DCA 2000); *see also Nova Information Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1006–07 (11th Cir.2004). Courts have held that a claim for unjust enrichment, a form of equitable relief, cannot stand if an express contract exists. *Morris v. ADT Sec. Services*, 580 F.Supp.2d 1305, 1312–13 (S.D.Fla.2008) (claim for unjust enrichment may proceed where plaintiff has not asserted a claim based on an express contract). Because this Court has previously found Defendants liable for breach of contract, this claim only applies to the Phones Defendants purchased and sold that are not subject to the "shrinkwrap" agreements that form the basis of TracFone's breach of contract claim.

■ By bulk purchasing the TracFone Prepaid Phones from bulk resellers below the manufacturers' cost of the Phones, the Defendants obtained benefits from TracFone that have resulted in significant financial benefits to the Defendants through its resale of the bulk purchased TracFone Prepaid Phones. [D.E. 6 at ¶ 141] Defendants acquired the benefits voluntarily and with full knowledge. *Id.* at ¶ 142. Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying TracFone the value of the benefits Defendants' acquired. *Id.* at ¶ 143. Therefore, the Defendants have been unjustly enriched by their actions. Because TracFone has elected to collect only statutory damages under the DMCA, the Court will not discuss the damages TracFone has suffered as a result of this unjust enrichment.

## CONCLUSION

Accordingly, it is hereby,

**ORDERED** and **ADJUDGED** that:

1. Final judgment is hereby entered against Defendant, Pak China Group Co., Ltd., a foreign corporation, and Defendant New Pak China Trade International Co., a foreign corporation, in favor of the Plaintiff, TracFone Wireless, Inc., on all of the claims set forth in TracFone's Complaint.

2. Pursuant to 17 U.S.C. § 1203(c)(3)(A), TracFone is entitled to recover statutory damages "of not less than $200 or more than $2,500" for each TracFone Prepaid Phone Defendant Pak China Group Co., Ltd. altered, or sold as part of a conspiracy to alter, in furtherance of the Bulk Resale Scheme. The Court finds that Defendant Pak China Group Co., Ltd. altered, or sold as part of a conspiracy to alter, at minimum, 1,000 TracFone Prepaid Phones in furtherance of the Bulk Resale Scheme in violation of

the DMCA. Final Judgment is hereby entered against Defendant, Pak China Group Co., Ltd., jointly and severally, in favor of the Plaintiff, in the principal amount of $2,500,000.00 which shall bear interest at the legal rate, and for which let execution issue forthwith.

3. Pursuant to 17 U.S.C. § 1203(c)(3)(A), TracFone is entitled to recover statutory damages "of not less than $200 or more than $2,500" for each TracFone Prepaid Phone Defendant New Pak China Trade International Co. altered, or sold as part of a conspiracy to alter, in furtherance of the Bulk Resale Scheme. The Court finds that Defendant New Pak China Trade International Co. altered, or sold as part of a conspiracy to alter, at minimum, 15,083 TracFone Prepaid Phones in furtherance of the Bulk Resale Scheme in violation of the DMCA. Final Judgment is hereby entered against Defendant, New Pak China Trade International Co., jointly and severally, in favor of the Plaintiff, in the principal amount of $37,707,500.00 which shall bear interest at the legal rate, and for which let execution issue forthwith.

4. Defendant Pak China Group Co., Ltd. and Defendant New Pak China Trade International Co. are hereby PERMANENTLY ENJOINED from:

a. purchasing and/or selling any wireless mobile handset that they know, or should know, bears, or at one time bore, any TracFone, NET10, Straight Talk, or SafeLink trademark, any other trademark owned or used by TracFone, or any other model of wireless mobile phone sold or marketed by TracFone ("TracFone Handsets"). Defendants are enjoined from purchasing and/or selling all models of wireless phones currently offered for sale by TracFone, or that may be offered for sale in the future, as listed and updated from time to time on TracFone's, NET10's, Straight Talk's, and SafeLink's websites, www.tracfone.com, www.net10.com, www.straighttalk.com and www.safelink.com, respectively, and including without limitation the following TracFone Handsets:

| TRACFONE/NET 10/STRAIGHT TALK | | |
|---|---|---|
| Kyocera K126C | Motorola Razr V3A | Nokia 1221 |
| Kyocera K126C(Pink) | Motorola W385 | Nokia 2285 |
| | Motorola W418G | Nokia 3390 |
| LG 3280 | Motorola V120T | Nokia 1100 |
| LG CG225 | Motorola V120C | Nokia 2600 |
| LG 200C | Motorola V60 | Nokia 2126 |
| LG 600G | Motorola V170 | Nokia 1112 |
| LG 410G | Motorola V171 | Nokia 2126I |
| LG 100C | Motorola C155 | Nokia 5125 |
| LG 220C | Motorola C343 | Nokia 5165 |
| LG 220C (Pink) | Motorola C139 | Nokia 6790 |
| LG 290C | Motorola C261 | Nokia E71 |
| LG 420G | Motorola V176 | Nokia E5 |
| LG 620G | Motorola C139 (Pink) | Nokia 1600 |
| LG 1500 | Motorola W370 | |
| LG 400G | Motorola W175G | Samsung T201G |
| LG 300G | Motorola W260G | Samsung T101G |
| LG 320G | Motorola W376G | Samsung T301G |
| LG 200CM | Motorola W375 | Samsung T105G |

| LG 231C | Motorola W377G | Samsung T155G |
|---|---|---|
| LG 800G | Motorola EM326G | Samsung T330G |
| LG 900G | Motorola W408G | Samsung T340G |
| | Motorola W408G (Red) | Samsung T528G |
| | Motorola EX124G | Samsung R451C |
| | | Samsung R355C |
| | | Samsung R335C |
| | | Samsung T404G |
| | | Samsung T401G |
| | | Samsung R810C |
| | | Samsung T255G |

b. rekitting, reflashing and/or unlocking of any TracFone Handset;

c. accessing, altering, erasing, tampering with, deleting or otherwise disabling TracFone's proprietary prepaid cellular software contained within any model of TracFone Handsets;

d. facilitating or in any way assisting other persons or entities who a Defendants knows or should know are engaged in rekitting, reflashing and/or unlocking TracFone Handsets and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in TracFone Handsets;

e. facilitating or in any way assisting other persons or entities who a Defendant knows or should know are engaged in any of the acts prohibited under this Permanent Injunction including, without limitation, the buying and/or selling of unlocked TracFone Handsets; and,

f. knowingly using the TracFone/NET10/Straight Talk/SafeLink Trademarks or any other trademark owned or used by TracFone, or that is likely to cause confusion with TracFone/NET10/Straight Talk/SafeLink Trademarks, without TracFone's prior written authorization.

4. The Court retains jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Permanent Injunction or the parties' settlement.

5. If a Defendant to this action violates the terms of this Permanent Injunction, TracFone shall be entitled to file an Affidavit or Declaration of Violation requesting that the Court order the payment of compensatory damages to TracFone in the amount of Five Thousand Dollars and No Cents ($5,000.00 (U.S.)) for each Phone purchased, sold, unlocked, reflashed, altered, rekitted, advertised, solicited and/or shipped in violation of the Permanent Injunction, or a single damages award of One Million Dollars and No Cents ($1,000,-000.00 (U.S.)), whichever is greater. TracFone shall provide at least five (5) working days notice to Defendant(s) after filing an Affidavit or Declaration of Violation. The Court finds that any amounts awarded under this paragraph are compensatory and reasonable estimations of the minimum damages suffered by TracFone for such a breach and will serve to compensate TracFone for its losses in the event a Defendant violates the terms of this Permanent Injunction.

6. The prevailing party in any proceeding to enforce compliance with the terms of this Permanent Injunction shall be entitled to an award of its attorneys' fees and costs.

7. The last known address of Defendant Pak China is 5/F, Oriental Crystal Finance Centre, 107–109 Chatham Road, T.S.T., Kowloon, Hong Kong

8. The last known address of Defendant New Pak China is O/B Sunny Trade Int'l Ltd., Shop 58 G/F, Chung King Mansion, 36–44 Nathan Road, Tsim Sha Tsui, Kowloon, Hong Kong.

9. The address of Plaintiff TracFone Wireless, Inc. is 9700 Northwest 112th Avenue, Miami, Florida 33178.

10. *Plaintiff is to serve a copy of the Final Judgment on Defendants Pak China Group Co. Ltd. and New Pak China Trade International, Co. within 20 days of the date of this Final Judgment.*